Worthington *v.* Dunkin *et al.*

---

## WORTHINGTON *v.* DUNKIN ET AL.

GUARDIAN AND WARD.—*Petition to Sell Real Estate.—Description of Ward's Interest.—Order of Sale.—Statute.*—Where the interest of a ward in certain real estate, under the statutes of 1843, was described in a petition to sell the same, as a reversionary interest, created by a will which was referred to, and it was alleged that it would not accrue until after the decease of the guardian, who by the will had a life estate in the land, the averments sufficiently showed that the interest was in remainder and not in reversion. The mistake in calling the interest a reversionary one was not, therefore, material, where the order of the court was also broad enough to cover whatever interest the ward had in the land.

SAME.—*Jurisdiction of Subject-Matter and Person.*—If the court, having jurisdiction over the subject-matter and of the ward, who was represented in the court by his guardian, erred in holding an insufficient petition to sell real estate of the ward to be good, it was a mere error, and not a defect of jurisdiction.

SAME.—*Omission to Sign Appraisement.—Statute.*—The failure of the appraisers to sign their appraisement was a defect which did not avoid the sale as against purchasers in good faith, under section 27, Rev. Stat. 1843, p. 458.

SAME.—*Private Sale.—Statutes of 1843, 1845, and 1847.—Innocent Purchaser.* By the act of 1843, pp. 529, 530, sections 233, 239, as amended by the act of 1845, p. 17, and the act of 1849, p. 52, the court was authorized to make an order allowing the guardian to sell the land of his ward at private sale for two-thirds of its appraised value. Without this permission, such an order would not avoid the sale in the hands of an innocent purchaser, when the land sold for its full appraised value.

SAME.—*Notice Not Required.*—*Statute.*—Under sections 114, 118, R. S. 1843, p. 613, a notice was not contemplated in case of private sales. BUSKIRK, J., dissented.

SAME.—*Jurisdiction.*—*Conclusive Presumption.*— As the probate court entertained and granted the petition, it must be presumed that it was shown to that court that the guardian was a duly appointed and qualified guardian of his ward, and that therefore it conclusively appeared that he took the necessary oath.

SAME.—*Deed of Guardian.*—*Record.*—*Evidence.*—The act of 1847, p. 117, required the guardian's deed to be entered at length upon the final record, and therefore such record, including the deed, was admissible in evidence.

SAME.—*Recitals.*—*Statute of* 1847.—Under section 2 of the act of 1847, p. 117, it was only necessary that a guardian's deed should contain succinct statements of the order of the court directing the sale, or the order confirming the same, or the order directing the conveyance.

SAME.—*Sale.*—*Proceedings to Set Aside.*—*Evidence.*—*Purchaser in Good Faith. Record Conclusive.*—On the trial of an action to recover land which had been sold by a guardian, on the ground that the proceedings were invalid, the plaintiff offered to prove that no sale of the land was ever made by the guardian; that his report of the sale and receipt of the purchase-money was untrue; that the transactions set forth in the probate record were the result of a barter and exchange between the guardian and the purchasers, the guardian taking the land received in exchange in his own name, and that no money was ever paid or agreed to be paid therefor by the purchasers from said guardian.

*Held,* that the evidence was not admissible against the defendant, who was a purchaser in good faith, and who had a right to rely upon the record, unless a knowledge of its falsity was brought home to him.

APPEAL from the Fountain Circuit Court.

WORDEN, J.—This was an action by the appellant against the appellee Sarah Dunkin to recover possession of, and quiet the title to, a certain tract of land. The other appellee, Van Meter, asked, and was permitted, to be made a defendant in the action on the ground that he had sold the land to said Sarah Dunkin, and had made her a warranty deed therefor.

Issue, trial by the court, finding and judgment for the defendants, a new trial being denied to the plaintiff.

The following are the facts in the cause:

George Worthington, the grandfather of the plaintiff, died, seized of the land in controversy, in the year 1834. By the last will of said George, he devised all his real estate in Fountain county, including that in controversy, to his wife,

Lydia Worthington, during her natural life. After her death, the tract in controversy was to go to his son, William Worthington, during his natural life, and after his death, the remainder was to go in fee to the appellant, the son of said William Worthington. The devisees were all in being at the death of the testator. Lydia Worthington is dead, but when she died does not appear. William survived her, and died in 1868. On the 15th of December, 1849, William Worthington, together with his wife, for the consideration of one thousand dollars, as stated in the deed, conveyed all their right and title to the premises to James McDonald and James Spears. On the 20th of May, 1850, William Worthington, as the guardian of his son, Thomas M., the appellant, for the consideration of five hundred dollars, executed a conveyance of all the right, title, and interest of the said Thomas M. in and to the premises to said James McDonald and James Spears. The proceedings of the court authorizing the sale by the guardian will be stated and considered hereafter.

On the 17th of August, 1850, McDonald and Spears, with their wives, executed a warranty deed for the premises, for the consideration of one thousand five hundred dollars, to Joseph Dunkin. Joseph Dunkin, on the 13th of September, 1850, for the consideration of one thousand five hundred dollars, conveyed and warranted the land to said Harrison Van Meter, and on the 28th of February, 1866, the said Van Meter, for the consideration of six thousand dollars, conveyed and warranted the land to the appellee Sarah Dunkin.

If the guardian's deed enures effectually to the benefit of the appellee, then her title is complete and perfect. Otherwise the appellant is entitled to the land.

There were two proceedings in the probate court of Fountain county by William Worthington as the guardian of his son Thomas M., for the sale of the land. We shall notice the latter only, as we may suppose the latter was resorted to in consequence of supposed defects in the former.

On the 20th of May, 1850, the latter proceedings were commenced. The record shows the following entry:

"William Worthington, guardian for Thomas M. Worthington, *v.* His said Ward. Be it remembered, that on the 20th day of May, Anno Domini, one thousand eight hundred and fifty, the same being the 7th judicial day of said May term of the probate court, and before the Honorable David Rawles, probate judge, comes now the said guardian, and on motion, files his petition herein, which petition is in the words and figures following, to wit: To the Honorable Court of Fountain county, Indiana. Your petitioner, guardian of the person and estate of Thomas M. Worthington, a minor, would respectfully represent that the said Thomas M. Worthington has a reversionary interest in and to the west half of the south-east quarter of section 12, in town 21 north, and range 7 west; said interest being created by a devise in the last will and testament of George Worthington, deceased, late of said county; and whereas the said interest will not accrue until after the decease of your petitioner, which may be many years hence, and whereas the buildings, fences, etc., are rapidly decaying, your petitioner would therefore pray your honor to grant your petitioner, as aforesaid, power to sell and convey the interest of the said Thomas M. Worthington, as aforesaid, in and to the premises aforesaid, and apply the proceeds thereof to the purchase of real estate, or be placed at interest. The said sale would, in the opinion of your petitioner, be much to the benefit of said Thomas M. Worthington as aforesaid. And your petitioner, as in duty bound, will ever pray, etc. May 20th, 1850.

"WILLIAM WORTHINGTON,

"Guardian of said Thomas M. Worthington.

"Sworn to in open court, May 20th, 1850.

"J. RISTINE, Clerk."

The court thereupon appointed Jesse Marvin and Joseph Poole as appraisers of the property, who were duly sworn in open court as such; and on the same day they returned to the court their appraisement of the property, appraising it at

the sum of five hundred dollars. The report of the apprais-
ers, however, although returned and entered of record, does
not appear to have been signed by the appraisers. An addi-
tional bond with surety was filed by the said guardian,
and approved by the court. Thereupon the court ordered
the sale, in the following terms: "And the court, being suffi-
ciently advised in the premises, and being satisfied that the
interests of the said Thomas M. would be promoted by the
sale of his said interest in and to the said lands, order and
decree that the guardian sell the said interest of his said
ward at private sale, for cash in hand, at not less than two-
thirds of the appraised value thereof, and that he report the
proceedings herein to this court at the present term."

On the same day, the said guardian made a report to the
court, in which report he styled himself a commissioner
appointed by the court, and in which he reported that on
that day he had sold the property to James D. McDonald
and James Spears for five hundred dollars cash in hand, being
the highest and best price which he could obtain for the prem-
ises. The report was confirmed by the court, and the guar-
dian ordered to execute a deed to the purchasers for the prop-
erty. On the same day, the guardian executed a deed accord-
ingly, and reported the same to the court, which said deed,
"having been seen and inspected by the court," was confirmed.

Several objections are made to the title thus claimed to
have been acquired under the proceedings in the probate
court, which we will proceed to consider. Before doing so,
however, we will notice some statutory provisions in force
at the time of the sale in question, and having a bearing upon
the questions presented. Sections 110 to 118 inclusive, R.
S. 1843, p. 612, provide for the sale of lands of minors by
their guardians. Section 110 provides, amongst other things,
that, "whenever it shall appear to be necessary for the edu-
cation of any minor, or for the sustenance of any minor,
insane person, or the family of either, that the real estate of
such minor or insane person should be sold, or if it should
be made to appear to such court that such real estate is suf-

fering unavoidable waste, decay, or injury, or that the value of such real estate can be invested in other property to the manifest advancement of the estate and interest of such minor or insane person, * * * the court, on the application of the guardian, may order the sale of such real estate, or so much thereof as, in the opinion of the court, it would be proper to sell."

The other sections provide for the application for power to sell being filed in writing, verified by the oath of the guardian; the appointment of appraisers by the court, who are to be sworn, and who are to make a return in writing to the court of their appraisement, signed by them; the giving of an additional bond by the guardian, with surety, and the approval thereof by the court; the ordering of the sale by the court; the making of a report to the court of the sale; and the confirmation of the sale by the court and the directing of a conveyance to the purchaser.

At page 458, sec. 27, is found the following provision: "In case any action shall be brought for the recovery of any real estate, sold by any executor, administrator, or guardian, under the direction of any court, or if any other action be brought by which the validity of the sale shall be contested, such action shall not be maintained, nor such sale avoided, on account of any irregularity or defect in the proceedings, if it shall be made satisfactorily to appear, first, that the sale was authorized and directed by a court of competent jurisdiction; second, that the executor, administrator, or guardian, took the oath, and gave bond, as may be required by law; third, that notice of the time and place of sale was given, in the manner prescribed by law; fourth, that the premises were sold accordingly, and are held by one, or under one, who purchased them in good faith."

If the four matters appear that are specified in the provision above quoted, the sale must be held valid. We need not, in this case, decide whether or not a sale could be upheld on general principles, where such matters do not all appear.

The land is held by Sarah Dunkin. She and her grantor, Harrison Van Meter, and his grantor, Joseph Dunkin, were purchasers in good faith. They purchased for a valuable consideration, and there was no evidence given or offered that either of them had any notice of any defect or irregularity in the sale made by the guardian. Sarah Dunkin is, therefore, not only a purchaser in good faith, but she also holds under those who were also purchasers in good faith. She comes within the fourth clause of the section of the statute above quoted.

It is objected that the petition filed by the guardian for an order for the sale of the land was not sufficient to give the court jurisdiction, because it did not sufficiently describe the ward's interest in the land; or if sufficiently described by reference to the will of the testator, the interest was an estate in remainder, and not in reversion as set forth in the petition.

The interest is described in the petition as a "reversionary interest," but it is shown that it was created by the will of George Worthington, deceased, and that it would not accrue to the said ward until after the decease of the said guardian, who we have seen had, by said will, a life estate in the premises. This we think sufficiently shows that the estate of the ward was an estate in remainder, and not in reversion. The mistake in calling his interest a reversionary one is a matter of but little importance, especially as it appeared on the face of the petition that it was an interest in remainder. The order of the court for the sale of the land is broad enough to cover whatever interest the ward had therein, and this consideration is decisive against the objection under consideration. In the language of the statute quoted, "the sale was authorized and directed by a court of competent jurisdiction." The court had jurisdiction over the subject-matter and of the ward, who was represented in the court by his guardian. It had the power to pass upon the sufficiency of the petition. This power to hear and determine is jurisdiction. *Dequindre* v. *Williams*, 31 Ind. 444. If a court thus

having jurisdiction errs in holding an insufficient petition to be good, it is a mere error, and not a defect of jurisdiction.

Again, it is urged that the petition did not state facts sufficient to authorize the court to direct the sale of the land. What we have said above disposes of this objection.

It is objected that the order of sale was void, because it authorized a private sale at not less than two-thirds of the appraised value of the property, inasmuch as the 118th section of the statute above referred to (R. S. 1843, p. 613) requires that at private sale the property must sell for its appraised value. We have seen, however, that the land was sold for the full appraised value. The appraisers returned their appraisement into court,. but it was not signed by them. The failure of the appraisers to sign their appraisement is a defect, as we have seen by the statute above set out, which will not avoid the sale as against purchasers in good faith. But it is insisted that although the property was sold for its appraised value, the order was void because the court had no power to make an order for the private sale of the property for less than its appraised value. We are strongly inclined to the opinion that if there was no law authorizing a private sale for less than the appraised value, the order in question was not void, but simply erroneous, and that under the statute the error would not avoid such sale, as against purchasers in good faith. But we are led to inquire whether the order was erroneous; in other words, whether there was no law that authorized the guardian to sell at private sale for two-thirds of the value of the property. By the 118th section above cited, guardians could not sell at private sale for less than the appraised value. But we find no restriction in the statutes of 1843 upon the power of the guardian to sell at public sale for any sum. He was not required to sell at public sale for two-thirds of the appraised value. If there is any provision therein requiring property sold by a guardian at public sale to bring two-thirds of its value, it has not been pointed out to us, and we have been unable to find it. By the law of 1843, then, a guardian might sell at public

sale at any price that he could get, the sale being, of course, subject to the approval or disapproval of the court; but at private sale he could sell only for the appraised value of the property. By the statutes of 1843, executors and administrators could sell land at private sale, but not for less than its appraised value; but in public sales by them the lands could not be sold for less than they could be sold for on execution. R. S. 1843, pp. 529, 530, secs. 233, 239. By an act of 1845 (Acts 1845, p. 17), it was provided, "that when any executor or administrator shall be ordered by any probate court to sell any real estate, it shall be lawful for such executor or administrator to make sale thereof for any sum not less than two-thirds of the appraised value of such estate." And by an act of 1849 (Acts 1849, p. 52), it was provided, that the above act "be and the same is hereby extended to sales made by guardians to minors, idiots, or insane persons, in the same manner as the same applies to sales by executors and administrators." In order to give the latter act any effect at all, it must be held to apply to private sales, because at the time of its passage guardians could sell at public sales for two-thirds or less than two-thirds of the appraised value of the property. We are of opinion, therefore, that the latter act applied to private sales by guardians, and hence that the order of the court, in respect to the point under consideration, was not erroneous.

It is objected that the order did not provide for any notice of the sale, and that the sale was made without notice. It is apparent that no notice of the sale could have been given as the whole proceedings, from the filing of the petition to the confirmation of the sale, took place on the same day. This objection raises the question whether under the statutes of 1843, any notice of the sale was necessary where the sale was private. The two provisions of the statute bearing upon this point (R. S. 1843, p. 613) are as follows: "Sec. 114. Upon such bond being filed and approved by the court, the court shall order the sale of such real estate, providing in the order for reasonable notice of such sale, the credits to

be given for the payment of the purchase-money, and the mode of securing the same.

"Sec. 118. Any real estate of such ward may be sold by the guardian at private sale by order of the court, on such terms as the court shall direct; but it shall not be sold for less than the appraised value thereof."

We are of opinion that under these provisions notice was not contemplated in cases of private sales. In the section providing for private sales, nothing is said on the subject of notice, and we think it was the intent that such sales should be made without notice. It is believed to have been the practice, under that statute, in portions of the State at least, if not generally, to make such sales without notice; and to hold now that notice was necessary would be to disturb and unsettle many titles that have heretofore been regarded as valid and indisputable. No notice was required in such case, and the third specification in section 27, before quoted, can only be held applicable to cases where notice is required, as in none other is a notice "prescribed by law."

It is also objected that it does not appear that the guardian took the oath as required by law.

We think as the probate court entertained and granted his petition, we must presume that it was shown to that court that he was a duly appointed and qualified guardian of his said ward. Indeed the court must be deemed to have decided that the guardian had been duly appointed and qualified; otherwise the order could not have been made authorizing him to sell his ward's land. *Dequindre* v. *Williams*, *supra*. We are of opinion, therefore, that it does appear conclusively that the guardian took the necessary oath.

In the introduction of the final record of the proceedings of the probate court, the defendants introduced, as part of the record, the record of the deed from the guardian to the purchasers of the land. This the plaintiff objected to, on the ground that the deed did not constitute any legitimate part of the record, and hence could not be proved by the record. An act passed in 1847 (Acts of 1847, p. 117) requires such

deeds to be entered at length upon the final record. Hence the entire record, including the deed, was admissible.

Again, it is objected that the guardian's deed is void because it does not recite at large the time of filing the petition; the order directing the sale, the order confirming the same, and the order directing the conveyance, as required by section 244, R. S. 1843, p. 531.

A later statute, however, provides, "that in all conveyances, assignments, or transfers ordered by any of the probate courts of this State, it shall not be necessary to set forth at large the order of such court directing any sale of real estate, or the order confirming the same, or the order directing such conveyance, assignment, or transfer, but succinct statement of such orders shall be sufficient." Acts 1847, p. 117, sec. 2.

The deed in question fully complies with the provisions of the latter act, and is valid.

None of the objections made to the defendants' title, derived through the guardian's sale of the land, can be sustained.

There remains another question to be considered. On the trial of the cause, and at a proper time, the plaintiff offered to prove that no sale of the land was ever made by the guardian; that his report of the sale and receipt of the purchase-money was untrue; that the transactions set forth in the probate record were the result of a barter and exchange of land by and between William Worthington and James D. McDonald and James Spears, whereby the said Worthington, acting as guardian for plaintiff, had traded and exchanged the plaintiff's interest in the lands in controversy to said McDonald and Spears for other lands, the title to which said William took in his own name, and that said barter thus made was the sole consideration of the attempted transfer of title under the order of the probate court, and that no money was ever paid for said land, or agreed to be paid therefor by the purchasers from the said guardian.

This evidence was rejected, on the objection of the defendant, and the plaintiff excepted.

We are of opinion that the evidence was correctly excluded. The probate record showed a sale for cash in hand. Joseph Dunkin, Harrison Van Meter, and Sarah Dunkin must be regarded as purchasers in good faith. They had a right to rely upon the record, unless a knowledge of its falsity was brought home to them. The facts offered to be shown could not affect the title of either, in the absence of notice to them of the facts. There was no offer to prove that either of them had such notice. The evidence, as offered, could not have affected the title of the defendants; hence it was properly rejected.

We have thus considered, we believe, all the grounds relied upon for a reversal of the judgment, and find no error in the record.

The judgment below is affirmed, with costs.*

BUSKIRK, J., dissents from so much of the above opinion as holds that a notice was not required in a private sale by a guardian under the statute of 1843.

*M. M. Milford* and *T. F. Davidson*, for appellant.

*J. Poole* and *J. McCabe*, for appellees.

*Petition for a rehearing overruled.