Davidson *et al. v.* Koehler *et al.*

No. 7438.

DAVIDSON ET AL. *v.* KOEHLER ET AL.

WILL.—*Title by Descent and by Devise.*—Where a will devises to the heir at law precisely the same estate that he would take by descent, his title by descent will have precedence of his title by devise.

SAME.—*Life-Estate.*—*Vested Remainder.*—*Heir.*—The will of a testator directed that the use and occupation and the rents and profits of certain real estate should be allowed and paid over to his wife during her natural life, for her support and the support and education of his minor son, and that after her death, and after the son should become of full age, the land "shall then be divided among my children then living, share and share alike."

*Held,* that on the testator's death in 1844, his wife took a life-estate in the land under the will and his children a vested remainder.

*Held,* also, that, as his children were devised exactly the same estate in the land that they would have taken by descent, they took the estate by descent under the law, and not by purchase under the will.

SAME.—*Constitutional Law.*—*Jurisdiction.*—*Guardian's Sale.*—Under the constitution of 1816, the "act for the relief of the estate of Noah Noble, deceased," was constitutional and valid, and conferred jurisdiction upon the Probate Court of Marion county to order the sale of any part of the real estate named in said act, pursuant to its provisions, upon the petition of the legal guardian of a minor heir of such decedent, and upon the consent of the parties named in the act.

SAME.—*Guardian and Ward.*—*Real Estate.*—Independently of such special act, the guardian of such minor might have obtained an order authorizing him, as guardian, to sell the estate of his ward under and pursuant to the provisions of article 4, chapter 35, R. S. 1843.

SAME.—*Special Act Construed.*—*Petition.*—*Process.*—The proceedings for the sale of the real estate of such minor under such special act were not contrary to the provisions of such will nor contrary to the general statutes, except as the same were modified by such act, and under it no verification of the petition of the guardian was required, and no process necessary to be issued against the defendants.

SAME.—*Failure of Testamentary Guardian to Qualify.*—Where the testamentary guardian of a minor fails or refuses to qualify, it is the duty of the court to appoint another person as guardian.

SAME.—*Appearance.*—*Written Consent.*—*Date.*—Such special act did not require that the parties, whose consent should be given to the sale, should appear either in person or by attorney to the petition of the guardian, and their written consent filed in the cause, that the court might make the order for the sale of the real estate, was a compliance with the act, and it was immaterial that such consent was dated twenty days prior to the filing of the petition, and it was not necessary that it should be attached to or made a part of the petition.

Davidson *et al. v.* Koehler *et al.*

SAME.—*Sale Bond.—Executor.—Guardian.—Commissioner.*—The sale of the real estate by order of the Probate Court of Marion county under such act was not void for the reason that no sale bond was filed by the executors of the estate or the guardian of the ward interested in such estate before the entering of the order of sale; but the order of the court conferred upon the commissioners appointed therein full authority to sell the real estate in the manner, upon the terms and for the purposes expressed in such special act and prescribed by the order of the court.

SAME.—*Bond of Commissioner.—Evidence.*—The bond of the commissioner appointed to sell such real estate, conditioned for the faithful performance of his trust, was material, and properly admitted in evidence in an action to recover the real estate sold under such act and order.

SAME.—*Married Woman.—Consent.—Parties.—Husband and Wife.*—Under said special act, an heir of the estate, and a married woman, was authorized and empowered to give her consent with her husband to the order of the court for the sale of the real estate; and it was not necessary that her children should be made parties to the proceedings by the guardian for such order.

SAME.—*Act Unrepealed.*—The act authorizing such special proceedings was not repealed by the provisions of the constitution of 1851, nor by the statutes of 1852.

SAME.—*Constitutional Law.—Local Law.*—Sections 22 and 23 of article 4 of the constitution of 1851 were prospective in their terms, and did not affect past local or special laws then in force.

SAME. —*Probate and Common Pleas Court.— Commissioner.*—The proceeding in the probate court, under such special act, was not discontinued by the abolition of such court by the statutes of 1852, but by the act of January 14th, 1853, Acts 1853, p. 38, was transferred to the Court of Common Pleas of Marion County, and the commissioner of the probate court continued so to be in the common pleas court.

SAME.—*Proceeding in Rem.—Jurisdiction.—Parties.—Abatement of Action.— Sales by Commissioner.—Title of Grantees.*—The proceeding under such act was *in rem* and not *in personam*, and, after the requisite petition and consent had been presented, the court acquired jurisdiction of the specific property, and thereafter, without regard to the parties named, the court had the power, and it became its duty, to cause the property to be sold for the purposes specified in the special act, and the death or resignation of a person originating or appearing in such proceeding did not necessarily abate or render the proceeding void nor the sales made invalid, nor prevent the commissioner from thereafter executing valid deeds in confirmation of such sales, nor defeat or impair the titles of the grantees therein, or those claiming under them as between them and the parties to such proceedings.

SAME.—*Confirmation of Sale.*—Under said act, no confirmation of the sales by the court was requisite or necessary to the validity of such sales, or to the validity of the deeds executed by the commissioner.

SAME.—*Jurisdiction.*—*Collateral Attack.*—Where proceedings are had before a court of full and complete jurisdiction of both the subject matter and the parties, such proceedings, even if erroneous, though not void, can not be collaterally attacked.

From the Marion Superior Court.

*J. S. Harvey*, *G. W. Galvin*, *S. A. Huff*, *S. H. Buskirk* and *J. W. Nichol*, for appellants.

*S. Claypool*, *H. C. Newcomb* and *W. A. Ketcham*, for appellees.

HOWK, J.—This was a suit by the appellants, as plaintiffs, against the appellees, as defendants, to recover the possession of certain real estate in Marion county, Indiana, and damages for being kept out of the possession thereof.

In their complaint, after reciting that this suit was brought, under an order of the court below, in severance of a former suit commenced by them in that court against the appellees and divers other persons, as defendants, the appellants alleged, in substance, that they were the owners in fee simple, and entitled to the possession, of lots numbered 36, 37, 38, 39 and 40, in Noble's subdivision of out-lots 45, 50, 55, 56 and 61, in the city of Indianapolis, in said Marion county ; that the appellees then held possession of the above described lots without right, and for about three years then last past had unlawfully kept the appellants out of the possession thereof. Wherefore, etc.

To this complaint the appellees jointly answered by a general denial.

In the court below, at special term, on the appellants' application, the venue of the cause was changed from the Hon. Daniel W. Howe, the judge there presiding, and the Hon. SAMUEL E. PERKINS, one of the judges of this court, was duly appointed as special judge of said superior court, to try this action.

The issues joined were tried by the court without a jury, and a *pro forma* finding was made for the appellees, the de-

fendants below, and judgment was rendered accordingly. The appellants' motion for a new trial having been overruled, and their exception entered to this decision, they appealed from the judgment of the special term to the court in general term, where the judgment was affirmed *pro forma*. From this judgment of affirmance the appellants, the plaintiffs below, have appealed to this court, and have assigned said judgment as error, and have thus brought before this court the alleged error of the court below, at special term (being the only error assigned as such in the general term of said court), in overruling their motion for a new trial of this case.

In this motion a large number of causes for such new trial were assigned by the appellants, consisting chiefly of alleged errors of law, occurring at the trial and excepted to, in the admission of evidence offered by appellees, over the appellants' objections. We need not now set out these causes for a new trial, but we will direct attention *seriatim*, as we consider and decide the important questions arising thereunder in the progress of this opinion.

. It may be premised, that both the appellants and the appellees claim to derive their respective titles to the real estate in controversy in this case, from a common source,—the former claiming title thereto under the last will and testament of Noah Noble, a former Governor of this State, as his devisees and heirs at law, and the latter claiming title to the lots in suit, under and by force of certain judicial sales, made under the orders of the probate court of Marion county, pursuant to the provisions of an act of the General Assembly of this State, entitled "An act for the relief of the estate of Noah Noble, deceased," approved January 19th, 1850. Local Laws 1850, p. 435.

The last will of Noah Noble was executed by him under the date of February 7th, 1844, and shortly afterwards, in

VOL. 76.—26

the same month and year, he departed this life.   His will
was duly proven by the oaths of the subscribing witnesses
thereto and admitted to probate, by and before the clerk of
the probate court of Marion county, on the 2d day of
April, 1844, and the executors named therein gave bond and
qualified, and entered upon the discharge of the duties of
their trust.   We will set out, in this connection, those parts
of this will which seem to us to have a bearing upon the
questions presented for our decision in this case, as follows :

"I, Noah Noble, of the county of Marion, the State of
Indiana, do make and publish this my last will and testa-
ment, hereby revoking and making void all former wills by
me at any time heretofore made :

"*First*.  I direct that my body be decently interred and
my funeral be conducted in a manner corresponding with
my estate and situation in life ; and, as to such worldly goods
as it has pleased God to entrust me with, I dispose of the
same in the following manner, to wit:  I direct, first, that
all my just debts and funeral expenses be paid as soon as
possible after my decease, and of the first moneys that shall .
come to the hands of my executors.

"*Second*.  I direct that the use and occupation and the
rents and profits arising from my home farm, consisting of
the following tracts of land, viz. :  Out-lots adjoining the
town of Indianapolis, numbered 45, 50, 55, 56, 61, 67, 68,
69 and 71 ; the west half of the southwest quarter of section
No. 6, of township 15, range 4 east, conveyed to me by Cas-
sey Ann Pogue ; and the south half of the northwest quar-
ter of section 6, township 15 north, of range 4 east, con-
veyed to me by S. G. Brown, shall be allowed to or paid
over to my beloved wife, during her natural life, for the
maintenance and support of herself, and the maintenance,
support and education of my only son, Winston Noble ; and
in case of the death of my said son before his mother, then said
occupation or income to be applied to her sole benefit during her

Davidson *et al. v.* Koehler *et al.*

life; and in case of the death of my wife before my son shall arrive at age, then such income shall be applied to his support, maintenance and education until he shall be of age.

"*Third.* At the death of my wife, if my son shall then be living and of age, or as soon thereafter as he shall become of age, or if he shall then be dead, I direct that my home farm shall then be divided among my children then living, share and share alike, taking into consideration any advancements herein by me made to any such child, so as to make the shares of my estate equal; and in case any of my children shall have died after my decease, and before such division, the heirs or representatives of such deceased child shall be entitled to such share as their respective ancestors would have received if then living.

\* \* \* \* \* \* \* \* \* \* \*

"*Fifth.* I direct that the tract of land known as the Ben Ark Reserve, being section 6, township 32 north, of range 3 east, containing 340 acres, shall be used and kept as common property for the benefit of my family, and improved under the charge of the present tenant, —— Cowden, under the direction of my executors, until my son shall become of age, at which time, or sooner in case of his death, if deemed advisable by my wife and children, or such of them as may then be living, the same may be sold, and the proceeds brought to and invested at the home farm or otherwise as may be thought advisable, for the common benefit of my wife and children and the heirs and representatives of such children as may then be dead.

"*Sixth.* I direct that the tract of land known as the Canal Farm, being the northeast quarter of section 22, town 16, range 3, shall be rented by my executors, and the income therefrom derived shall be applied to the maintenance and support of the three blacks now living on my home farm, Thomas and Sarah, his wife, and Cuffee, during their lives and the life or lives of the survivor or survivors of them;

and, if the income so derived shall not amount to the sum of fifty dollars per annum, I further direct that the deficiency shall be made up and paid to them out of the income derived from my home farm.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

"*Tenth*. I further direct that my household furniture, stock, implements of farming and all other my personal property shall remain on my home farm, to be used for the common benefit of my family, so long as they continue to live together as one family ; and, if at any time they should separate, I direct that my daughter, Catharine Davidson, shall have and possess as her own property all the furniture, etc., belonging to the apartment she occupies and uses, together with such other articles as my said daughter and her mother shall select and consider necessary for her convenience and comfort, together with a due proportion of farming utensils.

"*Eleventh*. I hereby nominate and appoint my son-in-law, Alexander H. Davidson, and my friend, George H. Dunn, to be executors of this my last will and testament ; and I do hereby declare this to be my last will and testament, contained in this and the five preceding pages. In testimony whereof I have set my name to the bottom of each page and my hand and seal to the last and sixth page, this 7th day of February, A. D. 1844."

On the trial of this cause it was shown by the appellants, that Noah Noble died testate in February, 1844, and that he left surviving him Catharine S. Noble, his widow, and Catharine Davidson and Winston P. Noble, his only children and heirs at law. It was further shown by the evidence, that Catharine S. Noble, the widow of Governor Noble, had survived her deceased husband for many years, and had died intestate, on the 12th day of July, 1874. Catharine Davidson, the only daughter of Governor Noble, died in March, 1857, and left surviving her Alexander H. Davidson, her

husband, and five children, namely: Dorman N. Davidson, then aged ten years, Preston A. Davidson, then aged eight years, Noah N. Davidson, then aged six years, Susan L. Davidson, then aged four years, and Catharine A. Davidson, then aged two years; and all of her said children were living when this action was tried below, and were plaintiffs therein. Said Catharine A., before she became of full age, was intermarried, in 1868, with George F. Miller, and was his wife when this cause was tried below. Alexander H. Davidson died on the 28th day of March, 1863.

The lots in controversy in this case were shown to be parts of the lands spoken of in the last will of Governor Noble, as his "home farm." The appellants also introduced evidence in relation to the rental value of the lots in suit, and in regard to some other matters which, under the view we shall take of the case, are unimportant, and need not be further noticed.

There can be no doubt, we think, that the evidence introduced by and on behalf of the appellants, on the trial of this cause, made a *prima facie* case for their recovery of the lots in controversy. The important and controlling questions, in this case, chiefly arise upon the rulings of the trial court, on the evidence introduced by the appellees. This evidence was offered for the purpose of showing that the title and estate, which the appellants had or would have taken, either under the last will of Governor Noble or by descent, in and to the lots in suit, had been sold and conveyed away from them long before the commencement of this action, in conformity with law and pursuant to certain valid judicial proceedings, under which the appellees claimed title thereto. There is one question, however, which arises upon the appellants' evidence, and ought to be first decided. For, upon the answer which must be given to this question, will depend the proper decision, as we think, of those questions which arise under the rulings of the court in regard to

the admission, over the appellants' objections and exceptions, of the evidence introduced by the appellees on the trial, for the purpose of showing their title to the lots in controversy in this case. It seems to us, therefore, that the question alluded to may properly be considered and decided in this connection, before we advert to or comment upon the case made by the appellees' evidence. This question may be thus stated:

Under the terms and provisions of Governor Noble's will, what title, interest and estate did his two children, and only heirs at law, Winston P. Noble and Mrs. Catharine Davidson, take in the real estate known and spoken of as the "home farm," and when and how did they take such title, interest and estate?

It is clear, we think, that, by the terms of the second item of the testator's will, his widow, Catharine S. Noble, took an estate for and during her own life in the "home farm." This is admitted by counsel on both sides. The point of difference between the learned counsel of the respective parties is in regard to the nature and extent of the estate which the testator's children, Winston P. Noble and Mrs. Catharine Davidson, took in the "home farm," subject, of course, to the life-estate of Mrs. Noble therein. The appellants' counsel claim, as we understand them, that the interest taken by the two children of the testator, at his death under his will, was an executory devise or contingent remainder, while the appellees' counsel insist that the interest so taken by the two children in the "home farm" was a vested remainder. Much learning and industry have been shown by the counsel of the respective parties in their arguments in support of their respective views of the question now under consideration. It has seemed to us to be unnecessary, however, that we should attempt to follow counsel in their arguments, or to examine and comment upon the numerous authorities cited and relied upon by them, in sup-

port of their respective positions. Under the more recent decisions of this court bearing upon the question we are now considering, we are of the opinion that the estate taken by the testator's children in the "home farm," at the testator's death, was a vested remainder. In other words, we think, that by the terms of the will the testator's children took the same estate in the "home farm" which they would have taken by descent, under the law, if they had not been named in the will. If, after giving Mrs. Catharine S. Noble an estate for her own life in the "home farm," the testator had made no disposition of the remainder therein, in his will, it would seem to be clear that in such a case the testator's children would have inherited the reversion in equal shares, and that was what the will attempted to devise to them. But the law is, that "A devise to the heir at law is void, if it gives precisely the same estate that the heir would take by descent if the particular devise to him was omitted out of the will. The title by descent has, in that case, precedence to the title by devise. The test of the rule, says Mr. Crosley, is to strike out of the will the particular devise to the heir, and then, if without that he would take by descent exactly the same estate which the devise purports to give him, he is in by descent and not by purchase." 4 Kent Com. 506.

It seems to us, however, that, in so far as the question stated is concerned, the case at bar can not well be distinguished from the case of *Stilwell* v. *Knapper*, 69 Ind. 558. In that case the testator's will, as construed by this court, made and provided for substantially the same disposition of his estate as the will of Governor Noble made with reference to his "home farm." The testator's will, as construed in the case cited, gave his wife a life-estate in all his property, real and personal, and then provided that, after his wife's death, and after his youngest child then living should arrive at the age of twenty-one years, his estate should be divided

between his children, naming them, to have and share alike. In delivering the opinion of the court in that case, WORDEN, J., said: "If the children of the testator be regarded as having taken under the will, the remainder became vested in them immediately upon the death of the testator, though not to be enjoyed in possession until the termination of the estate devised to Mary Steely" (for her life), "just as the reversion would vest in them by descent; so that, in this respect, they took the same estate by descent as by the will. And the direction in the will, that the land should not be divided between the children until the youngest one should become of age, did not change the tenure of the property. Indeed, it is said in a note to the case of *Scott* v. *Scott*, 1 Eden, 458, referring to authorities, that 'a mere alteration as to the time of the heir's coming to the estate does not create such a difference in point of estate as to prevent him from taking by descent.' "

The will under consideration, in the case cited, will be found in the opinion of the court. It contained a condition in restraint of the marriage of the testator's wife, which condition was declared void. Eliminating from the will this void condition, it will be seen, by comparison, that it did not differ, in any material particular, in its terms in devising the testator's real estate to his wife for and during her life, and after her death, and after his youngest child then living should become of full age, to his children in equal shares, from the provisions of the second and third items of Governor Noble's will, set out in this opinion, in regard to his "home farm." In the second item of his will, Governor Noble devised his "home farm" to his wife, Mrs. Catharine S. Noble, for and during her natural life ; and, in the third item, he provided that, after the death of his wife, and after his son should become of age, the "home farm" should be then divided among his children, share and share alike. We are of the opinion, therefore, that the case cited is decisive

of the question above stated ; and that, in conformity therewith and upon the authority thereof, it must be held in the case now before us, that, at the death of Governor Noble, the estate taken by his two children, Winston P. Noble and Mrs. Catharine Davidson, in the "home farm," was a vested remainder. And further, that, as by the terms of the will the testator's children were given exactly the same estate in the "home farm" which they would have taken by descent, under the law, if they had not been named in the will, and the estate in question had not been devised thereby, it must also be held that they took such estate by descent, under the law, and not by purchase, under the devise.

This conclusion is well supported by many decisions of the courts of last resort, both in this country and in England.    Thus, in *Moore* v. *Lyons*, 25 Wend. 119, Chancellor WALWORTH said :    "Where a remainder is so limited as to take effect in possession, if ever, immediately upon the determination of a particular estate, which estate is to be determined by an event which must unavoidably happen by the efflux of time, the remainder vests in interest as soon as the remainder-man is *in esse* and ascertained ; provided nothing but his own death before the determination of the particular estate will prevent such remainder from vesting in possession.    *Doe* v. *Nowell*, 1 M. & S. 327.    *    *    *    *

"A remainder is not to be considered as *contingent* in any case where it may be construed to be *vested* consistently with the intention of the testator.    The adverbs of time, therefore, such as *when, then, after, from and after*, etc., in a devise of a remainder limited upon a particular estate, determinable on an event which must necessarily happen, are construed to relate merely to the time of the enjoyment of the estate, and not to the time of its vesting in interest. *Boraston's Case*, 3 Coke's Rep. 19, *a*, and *Thomas & Fraser's note x*.    Such is especially the case in the construction of devises of real estate."

So, also, in *Doe, Lessee of Poor*, v. *Considine*, 6 Wal. 458, the Supreme Court of the United States, on page 476, thus stated the law on the question under consideration: "The law does not favor the abeyance of estates, and never allows it to arise by construction or implication. 'When a remainder is limited to a person *in esse* and ascertained, to take effect by *express limitation*, on the termination of the preceding particular estate, the remainder is unquestionably vested.' * * * * In 4th Kent's Commentaries, 282, it is said: 'This has now become the settled technical construction of the language and the established English rule of construction.' It is added: 'It is the uncertainty of *the right* of enjoyment, and not the uncertainty of *its actual enjoyment*, which renders a remainder *contingent*. The present capacity of taking effect in possession—if the possession were to become vacant—distinguishes a vested from a contingent remainder, and not the certainty that the possession will ever become vacant while the remainder continues.' " *Cropley* v. *Cooper*, 19 Wal. 167; *Blanchard* v. *Blanchard*, 1 Allen, 223; *Harrison* v. *Foreman*, 5 Vesey, 207; *Doe* v. *Prigg*, 8 B. & C. 231; *Johnson* v. *Valentine*, 4 Sandf. 36, 45; *Chew's Appeal*, 37 Pa. St. 23, 28; *Minnig* v. *Batdorff*, 5 Pa. St. 506; *Jeffers* v. *Lampson*, 10 Ohio St. 101; *Stanley* v. *Stanley*, 16 Vesey, 491; *Parkman* v. *Bowdoin*, 1 Sumner, 359.

We come now to the consideration of the case made by the appellees, in their defence of this suit, and of the various rulings of the trial court, complained of as erroneous by the appellants' counsel, in their briefs of this cause.

It may be premised in the outset, that difficulties were encountered by the personal representatives of Governor Noble, in the administration and settlement of his estate, arising from doubts then existing in regard to the proper construction of his will, and especially in regard to the character and extent of the estate taken by his two children, at his death, under

the terms of his will, in his "home farm." . In accordance with the usual custom of the times, for the purpose of removing the existing doubts, an application was made on behalf of persons interested in the estate of Governor Noble, to the General Assembly of this State, for the passage of a law for the relief of said estate, and to that end the following law was enacted, to wit:

"An Act for the relief of the estate of Noah Noble, deceased.
(Approved January 19th, 1850.)

"Section 1. *Be it enacted by the General Assembly of the State of Indiana,* That the probate court of Marion county, Indiana, be, and it is authorized, upon the petition of Winston P. Noble, by his guardian, with the consent of Catharine S. Noble, Alexander H. and Catharine M. L. Davidson, to order the sale of all that portion of the Noble farm lying west of the Peru and Indianapolis Railroad, in the city of Indianapolis, and which has already been platted.

"Sec. 2. That that portion of the alley in said plat running north and south, lying between Ohio and Market streets, be so changed as to run parallel with the track of said railroad.

"Sec. 3. That said sales may be at public or private vendue, as the court may order, and that the court shall order what portion of the purchase-money shall be paid in hand, and in what time the residue shall be paid, not however to exceed one, two, three, and four years, and shall appoint a commissioner to make said sales and to execute bonds and deeds according to the exigency of the case.

"Sec. 4. That the proceeds of said sales shall be applied first to the payment of the debts of the estate of said Noah Noble, deceased; and secondly, the residue of said proceeds of said sales shall be equally divided between the said Winston and Catharine M. L. Davidson, subject nevertheless to the provision made in said decedent's will for the maintenance of said Catharine S. Noble, and the maintenance and education of said Winston.

"Sec. 5. This act to take effect and be in force from and after its passage." Local Laws 1850, p. 435.

It is earnestly insisted by the appellants' counsel that this special act of the Legislature was unconstitutional and void, and that, for this reason, it did not and could not confer jurisdiction upon the probate court of Marion county to order the sale of any part of the "home farm" of Governor Noble, in the manner therein provided for. It is claimed, therefore, that the proceedings instituted and had by and before the said probate court, under and pursuant to the provisions of said act, were unauthorized by law and were insufficient to divest the children and heirs of Governor Noble of their title to, and estate in, the lands described as his "home farm." Such legislation as the special act under consideration has given rise to much litigation, and a contrariety of judicial decisions, in the different courts of last resort in this country, in regard to the constitutionality and validity of such laws. In Freeman's recent monograph on "Void Judicial Sales," p. 118, sec. 64, it is said: "Notwithstanding the decisive stand taken by the courts of New Hampshire and Tennessee against special statutes authorizing sales by guardians, such statutes have been sustained in other States so frequently, and in such varying circumstances, that their constitutionality is now almost free from doubt." In support of this statement in the text, Mr. Freeman cites the following authorities: *Rice* v. *Parkman,* 16 Mass. 326; *Stewart* v. *Griffith,* 33 Mo. 1, 23; *Carroll* v. *Olmsted,* 16 Ohio, 251; *Dorsey* v. *Gilbert,* 11 G. & J. 87; *Davis* v. *Helbig,* 27 Md. 452; *Thurston* v. *Thurston,* 6 R. I. 296; *Snowhill* v. *Snowhill,* 2 Green, 20; *Brenham* v. *Davidson,* 51 Cal. 352; *Sohier* v. *The Massachusetts General Hospital,* 3 Cush. 483; *Norris* v. *Clymer,* 2 Pa. St. 277; *Clarke* v. *Van Surlay,* 15 Wend. 436; *Estep* v. *Hutchman,* 14 S. & R. 435; *Davison* v. *Johonnot,* 7 Met. 388; *Thomas* v. *Pullis,* 56 Mo. 211.

In the same section of his monograph Mr. Freeman says : "If it be conceded that an infant, lunatic or other person incompetent to act for himself, is in need of ready money for his sustenance, or for any other pressing necessity, of course the conversion of his estate into money would be authorized by any tribunal having competent authority. Legislative licenses authorizing a sale under such circumstances are generally sustained. Nor is any necessity required to support the exercise of this legislative authority. It seems to be sufficient that the sale is one to which the incompetent person might, if *sui juris*, probably give his assent. Hence, a special statute may be supported if, without any apparent necessity, it sanctions the conversion of real into personal estate. This conversion is presumed to be beneficial to the minor, or, at least, not to be a destruction of his rights of property."

The act above set out, of January 19th, 1850, for the relief of the estate of Noah Noble, was enacted by the General Assembly while the constitution of 1816 was the organic and fundamental law of this State. Under that constitution the legislative power and authority of the General Assembly, within the boundaries of the State, was almost unlimited. The constitution contained but few, if any, prohibitions against the enactment of local or special laws, and it would seem that, in regard to any proper subject of legislation, the General Assembly might legislate by local or special laws or by general laws, as might be deemed expedient in the particular case, without danger of violating any of the provisions of that constitution. The consequence of this was that much of the legislation of this State consisted of local or special laws. An examination of the local laws from 1835 to 1851 will show that during those years not less than twenty-three special acts were passed for the relief of different decedents' estates. The settlement of decedents' estates was a proper subject of legislation ; and, as the constitution of

1816 did not require that all laws on that subject should be general, nor prohibit the enactment of local or special laws in relation thereto, it became a question purely of expediency for each General Assembly to determine for itself as to whether it would or would not enact a local or special law for the relief of a decedent's estate. With this question of expediency the courts have nothing to do. Whether the act we are now considering was expedient or inexpedient, we are of the opinion that it did not violate any of the provisions of the constitution of 1816, and was therefore a valid law.

As we have reached the conclusion, in construing the provisions of Governor Noble's will, that his two children, at his death, each took a vested estate in the lands known as the testator's "home farm," the special act above set out, for the relief of his estate, was, perhaps, an unnecessary law; for, as Winston P. Noble, the minor heir of the testator, had a vested estate in the "home farm," the legal guardian of such minor might have applied to the proper probate court and obtained therefrom an order authorizing him, as such guardian, to sell said estate of his said ward, under and pursuant to the provisions of article 4, of chapter 35, of the Revised Statutes of 1843. But, although the special act may have been unnecessary, yet it was, as we have seen, a constitutional and valid law; and the legal guardian of Winston P. Noble, with the consent of said Catharine S. Noble, and Alexander H. and Catharine M. L. Davidson, was thereby authorized to present his petition to the probate court of Marion county, and, upon that petition and consent, that court was thereby authorized "to order the sale of all that part of the Noble farm lying west of the Peru and Indianapolis railroad, in the city of Indianapolis, and which has already been platted."

Pursuant to said special act, and in conformity with its provisions, at the February term, 1850, of the said probate court, to wit, on February 25th, 1850, the said Winston P.

Noble, by John H. Bradley, the guardian of the person and estate of the said Winston P., only son and one of the heirs of Noah Noble, deceased, presented and filed his petition to said court, for an order to sell that part of the Noble farm described in said act.   With said petition, the said Catharine S. Noble, Catharine M. L. Davidson, and Alexander H. Davidson filed their written waiver of the service of process on said petition, and their consent to the order for the sale of the premises as prayed for in said petition.   Thereupon, a hearing was had of the matters arising under said petition, and the court, being sufficiently advised, made an order for the sale of that part of the Noble farm described in said special act, upon terms and conditions, and for the purposes, specified in said act; and John L. Ketchum was appointed a commissioner to sell such real estate pursuant to the order of the court.   When the appellees offered in evidence the record of the proceedings had by the probate court on said petition of the guardian of Winston P. Noble, the appellants objected to the admission of the evidence upon many grounds of objection, which we will separate, number and pass upon in their order:

1. "That the court had no jurisdiction of the subject-matter."   The special act above set out expressly conferred upon the court jurisdiction of the subject-matter, and, independently of that act, the court had such jurisdiction, as we have already decided under the provisions of article 4, of chapter 35, of the Revised Statutes of 1843.

2. "That the court had no jurisdiction of the parties." Winston P. Noble was an infant under the age of twenty-one years, and resided and owned an estate in Marion county; and the probate court of that county had jurisdiction of his person and estate, and had appointed John H. Bradley as his guardian at law.   The said Winston P. Noble and said Bradley, by filing said petition in said court, submitted themselves to the jurisdiction of the court, as did also the said

Catharine S. Noble, and Alexander H. and Catharine M. L. Davidson, by filing therein their written waiver of process, and their written consent that the court might make the order of sale prayed for in said petition. The court had jurisdiction of the parties.

3. "That the proceedings were contrary to the provisions of the will and the general statutes of the State at the time in force." The proceedings were not contrary to, but in harmony with, the provisions of the will, as we construe the will ; nor were they contrary to the general statutes, except as the same were modified by the provisions of the special act above set out, and this, chiefly, as to merely directory provisions.

4. "That the special act being unconstitutional, the proceeding was unwarranted by law, and is wholly void." We have already decided that the special act was a constitutional and valid law, under the constitution of 1816, which was the fundamental law of this State at the time of the passage of said special act. On this subject we have already said all that we desire to say.

5. "That the petition filed was not verified by the affidavit of the petitioner." The special act under which the petition was filed did not require that it should be verified in any manner. In section 111, of article 4, in chapter 35, of the Revised Statutes of 1843, it was provided that a guardian's petition for the sale of real estate should be "verified by the oath of the guardian." In this particular, as to the form of the application, the general law was modified by the special act. There is nothing in this objection.

6. "That the person assuming to petition the court was not the guardian of Winston P. Noble, his appointment being a nullity." This objection was not shown by the evidence objected to, but it elsewhere appeared that another person than the guardian named in said petition had been appointed as the testamentary guardian of Winston P. Noble

Davidson *et al. v.* Koehler *et al.*

by his father's will.   In section 87 of article 4, in chapter 35, of the revised statutes of 1843, in force at the time, it was provided that "Every such testamentary guardian shall give bond in like manner and with like condition, as is before required of a guardian appointed by the probate court." Before it could be assumed, therefore, in contradiction of the record offered in evidence, that another person than the person named as guardian in such record was in fact the guardian of Winston P. Noble, merely because such other person had been named as testamentary guardian in his father's will, it must also be shown that such testamentary guardian had qualified by giving bond as required by the statute ; for, if the testamentary guardian had failed or refused to qualifiy, as we may assume that she did, then it was the court's duty to appoint another person as guardian of said minor ; and the evidence shows that the court did appoint as such guardian the person who filed said petition, and this was sufficient.

7.   "That it appears from the proceedings, that no process was issued against the parties defendants, and that they did not appear, either in person or by attorney."   The proceedings show that the said parties filed a written waiver of process against them, and their written consent to the order prayed for in the guardian's petition.   This was all that the said parties were required to do by the provisions of said special act, and this was sufficient.

The appellants also objected to the admission in evidence of the said written waiver of process and written consent to the order of sale by said Catharine S. Noble and Alexander H. and Catharine M. L. Davidson, upon other grounds, which we will briefly consider.

1.   "That the parties to such written consent were, by reason of trust created by the will and the statutes of the State, debarred of the power or right to enter into such consent, and the same was void."   The construction we have heretofore given to those items of the will, whereby

the testator disposed of his "home farm," is a sufficient answer, we think, to this ground of objection. The will created no trust in relation to the "home farm." It gave the farm to Catharine S. Noble for and during her natural life. She was not under disabilities, and had the power and right to enter into the written consent for the order of sale. Under our construction of the will, Catharine M. L. Davidson, as one of the two heirs of Noah Noble, at his death, took, by inheritance, a vested remainder in the undivided one-half of the "home farm." This was an estate which she had the power and right to sell, or to consent to its sale, with the consent of her husband, Alexander H. Davidson. This was so, we think, without reference to the provisions of the said special act above set out; but, under that act, there can be no doubt but that it gave the parties the power and right to do all that it authorized or required them to do. ·

2. "That such consent bore date 20 days prior to the filing of the petition and the consideration of the same by the court, and was in no way attached to the petition, nor made a part of the same." There is absolutely nothing in this objection. Such a writing speaks and operates from the time it is filed and used, and it is immaterial what date it bears, or whether it bears any date. Nor was it necessary that such consent should be attached to or made a part of the petition. The written consent of the parties was entitled and filed in the cause, and this was sufficient.

3. "That said writing, in and of itself, authorized no act nor the exercise of any power over any property or thing described, and did not authorize any one to appear for said defendants." The special act, under which said proceedings were had, did not require that the parties named as defendants should appear therein, either in person or by attorney. All that the special act required or contemplated was, that the parties named should consent that the probate court of Marion county might make an order for the sale of the real

Davidson *et al.* *v.* Koehler *et al.*

estate described in the act.   It did not prescribe the manner in which the parties should indicate to the court their con-sent to such an order of sale.   They filed in the court and cause a writing, signed by each of them, in and by which writing they, each and all, signified their consent that the court might make such an order for the sale of the real estate.   The special act required nothing more of them.

4.   "That the order of the court in the premises was null and void, and conferred no authority upon any one to sell the real estate sought to be sold, for the reason that no sale bond was required to be filed by the executors of the estate, or the guardian of the infant interested in such estate, and that no such bonds were filed before the entering of the order."   It is a sufficient answer to this objection, we think, to say that in or by the special act, under which the pro-ceedings offered in evidence were manifestly had and held, no provision whatever was made for the filing of any sale bond by either the executor of the estate or the guardian of the infant heir.   Nor did the special act provide that the sales of real estate, therein and thereby authorized, should be made either by the executor of the estate or the guardian of the infant heir, or that the said sales should be made under and pursuant to and in conformity with the provisions of the general laws then in force, regulating the sales of real estate, either by executors or by guardians.   But the special act did provide and direct that the sales thereby authorized should be made by a commissioner, to be ap-pointed by the court, who should "execute bonds and deeds according to the exigency of the case;" and the fourth sec-tion of said act seems to contemplate that such commissioner should apply or distribute the proceeds of such sales, in the manner and for the purposes therein specified.   Whether the said special act did, or did not, provide that the commis-sioner to be appointed by the court under said act should give bond with security, conditioned for his faithful dis-

charge of the duties of his trust, it is certain that the commissioner so appointed did execute and file his bond with surety, to the approval of the court, and conditioned that he would "faithfully discharge his trusts, according to law and the order of the court, in the sale of said real estate, and in the management, disposition and application of, and faithful accounting for, the proceeds of such sale." We are of the opinion, therefore, that the order of the court for the sale of said real estate was not null and void, for the want of any sale bond, but that the said order of the court conferred upon the commissioner, therein appointed, full and ample authority to sell the real estate sought to be sold, in the manner, upon the terms and for the purposes expressed in said special act and prescribed by the order of the court.

The appellants also objected to the admission in evidence of the bond of said commissioner, "for the reason that the same was immaterial," and because "the bond filed was not such as was contemplated by the special act, or required by the order of the court, in this, that such bond was conditioned only for the sale of sufficient property to pay the debts of said estate." These objections to the admission of the bond in evidence seem to us to be utterly untenable, and without foundation either in law or in fact. The bond was material, and it was conditioned, as we have seen, for the faithful discharge of the duties of his trust. The bond was properly admitted in evidence.

We have considered these objections to the admission of the record of the proceedings of the probate court of Marion county, on the guardian's petition for the sale of a part of the Noble "home farm," at length and in detail, because the appellants must rest their right to a recovery in this action upon the alleged invalidity of these proceedings, and because, also, the proceedings in question constitute the foundation and origin of the appellees' title to the lots in controversy, as between them and the appellants. Doubtless there

were irregularities and informalities in these proceedings, and perhaps there may have been errors therein which would have authorized the reversal thereof, if an appeal had been taken therefrom in the proper manner and at the proper time. But the proceedings were had by and before the court, clothed by law with full and complete jurisdiction both of the subject-matter and of the parties; and, even if erroneous, they were not void, and can not be attacked collaterally. This rule of law is so well settled, not only by the decisions of this court, but by those of other appellate courts, both State and Federal, in this country, that it hardly seems necessary for us to cite authorities in its support. In *Worthington* v. *Dunkin*, 41 Ind. 515, upon the point now under consideration, it was said by WORDEN, J., speaking for this court: "The court had jurisdiction over the subject-matter and of the ward, who was represented in the court by his guardian. It had the power to pass upon the sufficiency of the petition. This power to hear and determine is jurisdiction. *Dequindre* v. *Williams*, 31 Ind. 444. If a court thus having jurisdiction errs in holding an insufficient petition to be good, it is a mere error, and not a defect of jurisdiction." See, also, on this point, the following cases, decided in this court: *The Evansville, etc., R. R. Co.* v. *The City of Evansville*, 15 Ind. 395; *Snelson* v. *The State, ex rel.*, 16 Ind. 29; *Spaulding* v. *Baldwin*, 31 Ind. 376; *Ney* v. *Swinney*, 36 Ind. 454; *Gavin* v. *Graydon*, 41 Ind. 559; *Curry* v. *Miller*, 42 Ind. 320; *The Board, etc.,* v. *Markle*, 46 Ind. 96; *Markle* v. *The Board, etc.*, 55 Ind. 185; *Faris* v. *Reynolds*, 70 Ind. 359; *The Board, etc.,* v. *Hall*, 70 Ind. 469; *McKeever* v. *Ball*, 71 Ind. 398; *Hume* v. *The Little Flat Rock Draining Association*, 72 Ind. 499; *Porter* v. *Stout*, 73 Ind. 3; *Brocaw* v. *The Board, etc.*, 73 Ind. 543.

The appellants also objected to the proceedings of the court, upon the guardian's petition, upon the ground that Mrs. Catharine M. L. Davidson, being a married woman,

could not consent by reason of her coverture to the order of the court for the sale of the real estate. But the special act under which the proceedings were had expressly provided for the consent of her and her husband, Alexander H. Davidson, to the order of the court for the sale of the real estate; and it must be held, we think, that she and her husband had the power and right to do, under said act, whatever it provided that they might do in the premises.

It is also objected by the appellants that the children of Mrs. Davidson were necessary parties to the proceedings on the guardian's petition for the sale of the real estate. The special act did not require that the children of Mrs. Davidson should be made parties to said petition, or that their consent or the consent of their guardian to the order for the sale of the real estate should be obtained or filed in said proceedings. Indeed, as we have decided that Mrs. Davidson had a vested estate in the Noble farm, it is .very clear, we think, that her children, in the absence of any statutory requirement, were neither proper nor necessary parties to the proceedings for the sale of a part of said farm.

For the purpose of abridging the evidence, the parties to the suit entered into an agreement, in substance, as follows :

"It is, for the purpose of this trial, agreed that John L. Ketchum, the commissioner, sold all the lots in the twenty-acre tract mentioned in the act of January 19th, 1850, given in evidence, and received therefor the sum of $15,975 ; that, upon an order of the court of common pleas of Marion county, of July 28th, 1854, made on the petition of Alexander H. Davidson, as guardian for his minor children, and by said Ketchum, as a guardian of Winston P. Noble, a certain tract of land, lying east of the Indianapolis and Peru railroad track, and amounting to about forty-five acres of said 'home farm,' was ordered to be platted into lots, and to be sold by said Ketchum ; that a plat of thirty-three acres of said ground into lots was made of record and ap-

proved by said court; that he sold a portion of said lots in the thirty-three acres, amounting to $17,750; that all or a great part of said sales were reported to and confirmed by said common pleas court; that said Ketchum reported to the court his disbursements of all the proceeds of said sales; that he reported that a portion of the money received was used, from year to year, under the orders of said court, to pay the taxes on the "home farm" and other property of the estate of Noah Noble; that some was paid on the debts of Noah Noble, and the residue, except the expenses of the trust and court costs, was paid to A. H. Davidson, as executor of Noah Noble, to wit, $18,000, and for the support of Winston P. Noble and Catharine S. Noble, of which $5,750 were paid in cash to said Winston, and $1,378 upon his notes and accounts after he became of age; that the said Ketchum, on June 30th, 1863, as commissioner, made his last report of his doings, under the appointments above named, to said common pleas court, and was then discharged by said court; that all of said lots sold for more than their appraised value, and were paid for by the said purchasers; that the said twenty acres are the same mentioned in the probate court order for the sale of said twenty acres."

The appellants objected to the admission of the foregoing evidence, on a large number of grounds, some of which we have already considered and passed upon, and these we need not further notice. There are other objections to the evidence, however, and these we will consider as briefly as we can, and decide the questions thereby presented.

1. "That the act authorizing the proceeding had been repealed by the new constitution of 1851, and the adoption of the code and the revised laws of 1852." This objection is not sustained, as it seems to us, by either the constitution of 1851 or by the code or revised statues of 1852. By the first clause of the schedule in the constitution of 1851, it was provided that "All laws now in force, and not incon-

sistent with this constitution, shall remain in force until they shall expire or be repealed.'' And in the second clause of said schedule it was also provided that ''All indictments, prosecutions, suits, pleas, plaints, and other proceedings, pending in any of the courts, shall be prosecuted to final judgment and execution.'' There is nothing in the constitution of 1851, so far as we are advised, inconsistent with any of the provisions of the special act of January 19th, 1850, and, therefore, that act would remain in force until the suit or proceeding authorized thereby and instituted thereunder had been prosecuted to final judgment, and had been disposed of by the final order of the proper court. Sections 22 and 23, of article 4, of the constitution of 1851, were prospective in their terms, and were a prohibition against the enactment, in the future, of local or special laws ; but they were not intended to, and did not, affect past local or special laws then in force. *The State v. Barbee, 3* Ind. 258.

The adoption of the code and the revised statutes of 1852, which went into force on May 6th, 1853, certainly did not repeal the special act of January 19th, 1850, by any express repealing provision. Indeed, it seems to us that, under the clauses of the schedule in the constitution of 1851, above set out, the Legislature had no power to repeal the said special act until the said suit or proceeding, thereby authorized and then pending, had been prosecuted to final judgment, and the act in question had thereby expired. It was the manifest intention of the schedule in the constitution of 1851, that all suits and proceedings then pending should be carried on in the several courts in the same manner as was then provided by law. So, also, in section 2 of the general repealing act of June 18th, 1852, it was provided as follows : ''No rights vested, or suits instituted under existing laws shall be affected by the repeal thereof, but all such rights may be asserted, and such suits prosecuted, as if such laws had not been repealed.'' 1 R. S. 1876, p. 769.

2. "That the proceeding in the probate court, and the appointment of John L. Ketchum as commissioner, had become discontinued, annulled and abolished by the abolition of the probate court." It is a sufficient answer to this objection to say that, before the revised statutes of 1852 took effect, on January 14th, 1853, an act was passed, and became a law in force on that day, providing for the transfer of all business pending before the probate courts of this State to the courts of common pleas of the proper counties, and legalizing the acts of the latter courts in having assumed jurisdiction of such probate business. There was, therefore, no discontinuance of the proceeding under consideration, and Ketchum continued to be the commissioner therein in the common pleas court.

The court did not err, we think, in overruling the appellants' objections to the evidence contained in the agreement of the parties, on the ground of its incompetency or irrelevancy. The record of the proceeding instituted in the common pleas court became necessary evidence, from the fact the same person acted as the commissioner in both proceedings.

The several deeds, under which the appellees claim title to the lots in controversy in this action, were all executed by John L. Ketchum, as commissioner, under and pursuant to the aforesaid order of the Probate Court of Marion County, in the proceeding authorized by, and instituted under, the said special act of January 19th, 1850. When these deeds were offered in evidence, the appellants objected to their admission, assigning many grounds of objection. Such of these objections as we have not already passed upon, we will now consider and dispose of.

1. "That the proceeding, under which the sale was made, had become defective and abated long prior to the execution of said deed, by the resignation of Bradley, as guardian, and the death of Mrs. Davidson." The proceedings under the special act of 1850 were proceedings *in rem*, and not *in*

*personam.* This is shown, we think, by all the provisions of the special act. The probate court was thereby authorized, on the petition of Winston P. Noble, by his guardian, with the consent of Catharine S. Noble, Alexander H. and Catharine M. L. Davidson, to order the sale of a certain part of the Noble farm described in said act. The manner and terms of the sale, within certain limits, were left in the discretion of the court; but the act provided that the court "shall appoint a commissioner to make said sales, and to execute bonds and deeds, according to the exigency of the case." It was not contemplated in or by said act, that Winston P. Noble, or his guardian, should have aught to do with the proceedings thereby authorized, except to present the required petition; or that Mrs. Noble and Mr. and Mrs. Davidson should have any connection with said proceedings, except to signify their consent thereto. After the requisite petition and consent had been presented, the court acquired jurisdiction of the specific property; and thereafter, without regard to the parties named, the court had the power, and it became its duty, to proceed against the property and to cause it to be sold for the purposes specified in the special act. In such a case, the death or resignation of a person originating or appearing in such a proceeding as the one under consideration, does not necessarily abate or render the proceeding defective. The appellants' first objection, as set out above, to the admission of the deeds in evidence, is therefore not well taken.

2. "That the plaintiffs Davidsons were never in the jurisdiction of any court in any proceeding affecting said land." This point we have already decided. Mrs. Catharine M. L. Davidson, under whom the Davidson plaintiffs claimed title to the lots in controversy, was within the jurisdiction of the court when the order was made by the court for the sale of said lots, and when they were in fact sold by the commissioner; and the children of Mrs. Davidson, the plaintiffs in

this action, had then no estate in said land, and were neither necessary nor proper parties to said proceeding for the sale of said land.   We are of the opinion that the subsequent death of Mrs. Davidson did not invalidate the proceedings had nor the sales made, nor prevent the commissioner from thereafter executing valid deeds in confirmation of such sales, nor defeat or impair the titles of the grantees in such deeds, and those claiming under them, as between them and the Davidson appellants, as the heirs at law of Mrs. Davidson.

The appellant Winston P. Noble was a party to the proceeding in its inception, and remained a party notwithstanding the resignation of his guardian.   As against him, said Winston P. Noble, it can not be doubted, we think, that the deeds given in evidence conferred upon the grantees named therein, and those claiming under them, absolute titles in fee simple to the lots in controversy.

3. "That it does not appear from the evidence, that the sales of the property described in such deeds were ever reported to any court for confirmation, or that such sales were ever confirmed by any court."   Under the special act of January 19th, 1850, pursuant to which act the proceedings were instituted and had for the sale of said property, and under the order of the probate court of Marion county, in said proceedings, authorizing the sale of said property, the commissioner thereby appointed was not required to report the sales made by him to the court for confirmation.   The order of said court, which was made under and conformed to the provisions of said special act, contained, among others, the following directions to the commissioner appointed to sell said property:   "5th. That upon such sales and payments, and execution and delivery of said notes, said commissioner shall execute and deliver to the purchasers severally a title bond, in sufficient penalty, conditioned for the execution and delivery of a good and sufficient deed, upon the payment of the purchase-money, with interest.   6th. That, upon the

payment of the purchase-money and interest by said purchasers, severally, said commissioner shall execute and deliver to said purchasers, severally, a good and sufficient deed in fee simple, which said deed, so executed and delivered, shall pass to the purchasers, severally, all the interest said Noah Noble, deceased, had in said premises, and the interest of his heirs and devisees in the same.'' These provisions of the order of the court, which were fully authorized by the special act, show very clearly that no confirmation of the sales by the court was requisite or necessary to the validity of such sales, or to the validity of the several deeds executed by the commissioner in pursuance thereof.

We have now considered and decided what we regard as the controlling questions in the case at bar, and our conclusion is, that no such error has intervened in the record before us as authorizes or requires the reversal of the judgment below. The records of the proceedings of the probate court and common pleas court, given in evidence, however defective, or even erroneous, they may be, are conclusive as to the matters embraced therein, and are not the subjects of collateral attack. These facts are clearly shown by the evidence: That the lots in controversy were sold in good faith, under the order and direction of the court having full and complete jurisdiction, for more than their appraised value, and for the benefit of the appellants or of those under whom they claim; that the lots were bought and paid for, in good faith, by the appellees or by those under whom they claim; that the purchase-money paid for said lots, by the appellees or their grantors, was received and divided by and between the appellants or those under whom they claim; and that, under such sales and purchases, so made in good faith, and the deeds executed in consummation thereof, the appellees, or those from whom they derived title, had been in the quiet and peaceable possession of said lots, as the owners thereof,

for about a quarter of a century before the commencement of this suit.

We are of the opinion, therefore, that the finding of the trial court, in this cause, was right in equity and good conscience, and in strict accordance with law.

The judgment is affirmed, at the appellants' costs.

Petition for a rehearing overruled.