## CLORE ET AL. v. SMITH ET AL.

[No. 6,615.    Filed February 15, 1910.]

1.  WILLS.—*Remainders.*— *Contingent.*— *Vested.*— *Postponement.*—*Presumptions.*—The law favors the vesting of estates absolutely, rather than contingently, and at the earliest possible moment, the presumption being that words of postponement relate to the beginning of the time of enjoyment and not to the vesting of the estate.  p. 342.

2.  WILLS.—*Construction of Language.—Presumptions.*—The presumption is that the words of a will were employed in their customary legal sense.  p. 342.

3.  WILLS.—*Remainders.—Vesting.*—A will devising to testator's widow certain real estate for life, and further providing that "at her death * * * the rest and residue of [his] property to be divided among [his] children then living and their descendants," gives a remainder to testator's children, vesting at his death, but the enjoyment of which was postponed until the death of such widow, *Corey* v. *Springer*, 138 Ind. 506, and *Wood* v. *Robertson*, 113 Ind. 323, distinguished.  p. 343.

4.  WILLS.—*Legacies.—Vesting.—Enjoyment.*—A will bequeathing to each of two of testator's sons a certain sum of money, making such sums a charge upon certain devised lands, and providing that "at her [testator's widow's] death, after the payment of said sums" the remainder of the property to be divided, gives a legacy to such two sons, vesting at testator's death and payable upon the death of his widow.  p. 346.

From Howard Circuit Court; *J. F. Elliott*, Judge.

Suit by Mary E. Clore and others against William A. Smith and others.  From a judgment for defendants, plaintiffs appeal.  *Affirmed.*

*Kirkpatrick & Morrison*, for appellants.

*Bell & Purdum* and *Harness, Moon & Voorhis*, for appellees Kellar and Moore.

*Overton & Barnes*, for appellees William A. Smith and H. L. Smith.

HADLEY, J.—On November 23, 1887, William A. Kellar departed this life testate, and owning certain lands in Howard county.  He left surviving him a widow, three

daughters, four sons and two grandsons.   On May 17, 1907,
the widow, Susan M. Kellar, died, leaving surviving her, as
heirs, two daughters and three sons.    One of the sons,
Charles R. Kellar, died after the death of the testator and
before the death of the widow, without leaving surviving
him any child or descendant of any child, but leaving a
widow, appellee Mahala Jane Kellar, to whom said Charles
Kellar, by his will, bequeathed all of his property, real and
personal, and one of the daughters, Sarah K. Moore, died
after the death of the testator, and prior to the death of the
widow of testator, leaving no child or descendant of any
child, but leaving a husband, appellee Alonzo W. Moore, and
her mother, Susan Kellar, as her only heirs.   The will of
William A. Kellar provided for the payment of his debts and
funeral expenses, and devised to his widow, Susan M. Kellar,
all of his personal property of every character absolutely,
and a life estate in all of his real estate remaining after the
payment of debts.   Item three of said will, which is the item
involved in the controversy, is as follows:

> "I will and devise that at the death of my beloved wife,
> Susan M. Kellar, that all my said property herein de-
> vised then remaining shall be disposed of as follows, to
> wit:   That William A. Smith and Henry L. Smith, my
> grandsons, be each given and paid the sum of $400, and
> the same is hereby made a charge upon my said real es-
> tate, not mentioned in item first of this will, but in no
> event to be paid until after my beloved wife's death.
> And at her death, after the payment of said sums of
> $400, as herein provided, for the rest and residue of my
> property to be divided among my children then living
> and their descendants, such grandchildren, or great
> grandchildren, as the case may be, to take a parent's
> part only;   Provided, that said William A. Smith and
> Henry L. Smith are only to have said sum of $400 each
> in any event."

The question presented here is whether the remainder
over in said real estate vested in the children of testator at
the time of the testator's death, or whether it was a con-
tingent remainder until the death of the widow, Susan M.

Kellar, it being conceded that the widow had a life estate in said land. Appellants insist that by the terms of item three the vesting of the estate is postponed until the death of the widow, and cite, as sustaining this construction, the language of said item, which provides that the property is to be divided among the children then living and their descendants, and also the provision that this division shall not be made until after the specific bequest of $400 each to the grandsons shall have been paid. And, to sustain this contention, appellants cite the case of *Corey* v. *Springer* (1894), 138 Ind. 506. Appellees, however, contend that by the language of this item the title vested at the death of the testator, and the postponement fixed in item three was merely the postponement of the enjoyment.

It is an established principle that the law favors the vesting of remainders absolutely, rather than contingently, and at the earliest possible period, and presumes that

1. words of postponement relate to the beginning of enjoyment and not to the vesting of the estate. *Myers* v. *Carney* (1908), 171 Ind. 379; *Taylor* v. *Stephens* (1905), 165 Ind. 200.

And it will be presumed, in the absence of language in the will repelling the inference, that the words and expressions used were employed in the light of the settled mean-

2. ing which the law attached to such words and expressions. *Taylor* v. *Stephens, supra; Fowler* v. *Duhme* (1896), 143 Ind. 248. As was said in the case of *Taylor* v. *Stephens, supra:* ''Of course, there is no iron rule of law binding words of survivorship to the time that the will takes effect, and therefore the courts will look to the language of the instrument in endeavoring to ascertain the intention of the testator; but the effect of the rule, prescribing, as it does, the meaning of the will in the absence of a clear expression to the contrary, is to interdict the effort to draw up the intention of the testator from the depths of his words after it is perceived that the intent is not clear.'' In

the case of *Heilman* v. *Heilman* (1891), 129 Ind. 59, the court presents the following rule for determining whether a remainder is vested or contingent: " 'We think that the question of vesting, or remaining contingent, depends upon whether the condition of the intervening estate determining, and the estate over taking effect, is one that must happen some time, and so as to give effect at some period to the second estate, or may never happen. If the former, then the second estate in remainder will always be regarded as vested. But in every case where the existence of the secondary estate is made dependent upon a contingency which may never happen, or never happen so as to allow of the vesting of the secondary estate, then the devise or bequest must be regarded as contingent, as well in its character as in regard to the time when it will come into operation.' [2 Redfield, Wills, 218, 6.] * * * In *Bruce* v. *Bissell* [1889], 119 Ind. 525, this language is used: * * * 'An estate in remainder is not rendered contingent by the uncertainty of the time of enjoyment. The right and capacity of the remainderman to take possession of the estate, if the possession were to become vacant, and the certainty that the event, upon which the vacancy depends, must happen some time, and not the certainty that it will happen in the lifetime of the remainderman, determines whether or not the estate is vested or contingent.' "

Applying these rules to the will before us, it seems clear that we must hold that by its terms the widow took a life estate in the land, that the remainder over vested 3. at the time of the testator's death in his children, subject to the legacies to his grandsons named, and that the time fixed therein for the division had reference to the enjoyment of the respective interests. We are supported in this view by the case of *Davidson* v. *Koehler* (1881), 76 Ind. 398, where the testator, after bequeathing a life estate to the widow, proceeded in part as follows: "At the death of my wife * * * I

direct that my home farm shall then be divided among my children then living, share and share alike, * * * and in case any of my children shall have died after my decease, and before such division, the heirs or representatives of such deceased child shall be entitled to such share as their respective ancestors would have received if then living.'' The court, in an exhaustive and well-reasoned opinion, held that the remainder vested at the death of the testator. This opinion was afterwards reaffirmed in *Davidson* v. *Bates* (1887), 111 Ind. 391, and has been cited with approval many times since. And our decision is further supported in principle by the following cases: *Myers* v. *Carney, supra; Tindall* v. *Miller* (1896), 143 Ind. 337; *Amos* v. *Amos* (1889), 117 Ind. 19; *Taylor* v. *Stephens, supra; Harris* v. *Carpenter* (1887), 109 Ind. 540; *Burke* v. *Barrett* (1903), 31 Ind. App. 635; *Campbell* v. *Bradford* (1906), 166 Ind. 451; *Heilman* v. *Heilman, supra; Hoover* v. *Hoover* (1889), 116 Ind. 498.

The only cases that have been cited by appellants as directly having a contrary effect are *Corey* v. *Springer, supra,* and *Wood* v. *Robertson* (1888), 113 Ind. 323. As we view the case last cited, it can hardly be considered as an authority or precedent here. The will under consideration in that case gave a life estate to the widow, and at her death the property was to be divided equally, share and share alike, among testator's children then living, and the descendants of such as might be dead. The question for decision was whether the descendants of a child that had died took *per stirpes* or *per capita*. But in the course of the opinion the court discussed the question as to whether the remainder over was vested or contingent until the death of the widow, and on this point the court uses this language: ''The testator intended by this will to devise to his wife an estate for life, and to give his children living at her death, and the descendants of such as were then dead, a vested remainder. * * * Our reason for asserting that the estate

in expectancy is a vested and not a contingent remainder is that there was no uncertainty as to the taking effect of the estate, although there was as to the time it would take effect. As Judge Sharswood says: 'It is the uncertainty of the right which renders a remainder contingent, not the uncertainty of its enjoyment.' There is here no uncertainty as to the event on which the particular estate must determine, for, as Preston says, it is morally certain the life tenant must die, so that if there is any uncertainty it must be as to the persons to whom the remainder is devised. 4 Kent's Comm. (12th ed.), *203, note. But we think that, construing all the provisions of the will together, it must be held that the remainder was intended to be in the nature of a vested one. * * * We are by no means clear that the heirs take by purchase and not by descent, for, eliminating the provisions as to the life estate of the widow, the evident intention was to create just such an estate as the law would cast by descent upon the children and grandchildren.'' The court then proceeds to determine the question at issue, and holds that ''the descendants'' take *per stirpes* and not *per capita*. As we understand the language quoted, it is in accord with our opinion. In the case of *Corey* v. *Springer, supra*, the will provided that the widow should keep and use the real and personal property during her natural life, if she so long remained a widow, but in case of her remarriage this provision was to be void, and she should take of testator's property as provided by law of descent. In the case of the death of the widow, without having remarried, the will proceeds: ''I bequeath all my property, share and share alike, to my children. If any of my children shall be dead at the time of such distribution or disposition, leaving children, such children are to take the share of their deceased father or mother, as the case may be. In case my wife should again marry, and so take the provision herein made for her, in that event, under the law of Indiana, I bequeath the remainder of my estate, real and personal, to my chil-

dren, and the representatives of such as may be dead, if any, as provided in the former part of this will.''

It will be observed that the remainder over was determinable by one of two contingencies, either of which might not happen, viz., her remarriage or death without remarriage. In one case the interests of the remaindermen might be essentially different from what it would be in the other, and in the nature of things these interests could not be definitely determined until the death of the widow. The testator specifically fixed the time when these interests should be measured, and designated the parties who should partake as of the time when such distribution should be made. The will in that case provided:

> ''If any of my children shall be dead at the time of such distribution or disposition, leaving children, such children are to take the share of their deceased father or mother, as the case may be.''

And as was held in the case of *Campbell* v. *Bradford, supra:* ''This language clearly shows that the words of survivorship used in the Springer will referred to the death of any of his children at any time before the death of his widow if she survived him, as was held in that case.'' No such definite language is found in the will in this case.

Our position is not inconsistent with the provisions of the will in regard to the legacies bequeathed to the two grandsons. It is clear that these legacies are made to vest upon the death of the testator, as they are made a lien upon the land; but their payment or enjoyment is postponed until the death of the widow, and this might be taken as some evidence that the testator intended that all the objects of his bounty should be treated alike, and that all interests should vest and be enjoyed at the same time. The construction we have here given to the will is the construction given by the court below, and it is conceded that under such construction the finding should be for appellees.

Judgment is therefore affirmed.