## BURLINGTON UNIVERSITY v. BARRETT, Executor.

1. **Will: CONTRACT: CONSTRUCTION.** The rule of construction by which to determine whether an instrument is a will or contract, stated to be this: If the instrument passes a *present interest*, although the right to its possession and enjoyment may not accrue until some future time, it is a *deed or contract;* but if the instrument does not pass an interest or right until the *death of the maker*, it is a will or testamentary paper.

2. —— COMPOUND INSTRUMENT. An instrument may be partly a deed or contract and partly testamentary.

3. —— CONSTRUCTION. In determining whether an instrument is testamentary or contract, courts do not allow the use of language peculiar to either class, nor even the belief of the maker as to the character of the instrument, to control inflexibly their construction of it. But giving due weight to these circumstances, courts look further, and, weighing all the language as well as the facts and circumstances surrounding the parties attending the execution of the instrument, give to it such construction as will effectuate the manifest intention of the maker.

*Appeal from Des Moines District Court.*

THURSDAY, APRIL 11.

THIS proceeding was originally commenced before the County Court of Des Moines county, sitting as a probate court, for the allowance of the claim made in the petition, as a claim against the estate of Richard F. Barrett, deceased, to be paid as the same should thereafter by its terms become due. There was a demurrer to the petition, which was sustained by the County Court, and the plaintiff appealed therefrom to the District Court. In the District Court the appeal was transferred to the equity docket, and by agreement of the parties the pleadings were amended, and the cause tried as an equity cause by the first method. In the District Court the cause was submitted upon the pleadings, evidence and exhibits, and a decree was rendered against defendant, and in favor of plaintiff, for $1,199, being the amount of the first five annual payments, with six per cent interest, and also for $200, to become due January 1, 1867, and the sum of $200 on the first of January of each year thereafter, for five years, with six per cent interest after maturity, and the sum of $20,000, to become due and payable when plaintiff shall have secured an additional endowment fund of $30,000; the fact of such additional endowment to be determined judicially. The defendant has now appealed to this court. The further facts will be found stated in the opinion.

*Grant & Smith* for the appellant, in the course of a lengthy printed argument, referred to the following authorities in support of the proposition that the instrument sued upon was a testamentary paper: *Kinard* v. *Kinard*, 1 Speer's Eq., 256; *Habergham* v. *Vincent*, 2 Vesey, Jr., 230; 1 Williams on Executors, 54 to

56; *Hunt* v. *Hunt*, 4 N. H., 434; *Crawford* v. *McClay*, 2 Speer's Eq., 230; *Hester* v. *Young*, 2 Kelley, 46; *Greene* v. *Proud*, 1 Modern, 117; *Metham* v. *Duke of Devon*, 1 Peere Williams, 529. Also the following cases, cited in the case of *Hester* v. *Young*, *supra*, as holding to the same principle : 3 Haggard, 221; Carthew, 38; *West's case*, Moore, 177; *Audley's case*, Dyer, 166 *a ; Greene* v. *Proud*, 1 Modern, 177; Finck, 195; 1 Peere Williams, 529; 8 Viner's Abridgment, 454; Eng. Eq., 108; 4 Haggard, 44; 2 Id., 554; *Habergham* v. *Vincent*, 2 Vesey, Jr., 230; *Crawford* v. *McClay*, 2 Speer's Eq., 230; 1 McCord, 517; 1 Will. Ex., 59; 2 Bailey's S. C., 588; *Jaggers* v. *Estes*, 2 Strobhart's Eq., 349, cited by appellee and cases cited in the note.

*J. M. Beck* for the appellee.

I. The obligation, which is the foundation of the suit, must be sustained and enforced by the court unless it be shown by the defendant to be illegal or void as a contract.

"It is the desire of the law to effectuate rather than defeat a contract." 2 Parsons on Contract, 15–18, and notes.

Where a contract will admit of two constructions, one making it inoperative and the other valid, the last is to be adopted. 2 Parsons on Contract, 12, and note ; *Archbold* v. *Thomas*, 3 Cowen, 290.

II. The instrument, which is the foundation of the suit, is a valid contract, and not a testamentary writing.

(If the instrument is a valid contract it is irrevocable at the will of the obligor; if testamentary it is revocable at the will of the maker, and is *ambulatoria voluntas*.)

1. PRINCIPLES OF CONSTRUCTION.—If an instrument is *intended* to operate as a deed or contract, the intention must prevail and the writing must be so taken. *Dawson*

v. *Dawson*, Rice's Eq. 260; *Jaggers* v. *Estes*, 2 Strobhart's Eq., 378.

The intent and meaning of parties to a contract must be ascertained by construction and followed, unless, by so doing, violence shall be done the rules of language or the rules of law. 2 Parsons on Cont. 7; *Patrick* v. *Grant*, 2 Shepley, 233; *Gray* v. *Clark*, 11 Vermont, 583. The intention of the parties may be ascertained by evidence of extrinsic circumstances which surrounded the transaction—the court placing itself in the situation of the party whose language it is called upon to construe. *Hosbrock* v. *Paddock*, 1 Barb., 635; *Howland* v. *Leech*, 11 Pick., 154. Not only is the intention of the parties to be considered, but their situation also, in determining the meaning of the contract. *Brown* v. *Slater*, 16 Conn., 192; *Hopkins* v. *Young*, 11 Mass., 302; *Fowle* v. *Biglow*, 10 Id., 376; *Sumner* v. *Williams*, 8 Id., 214; 2 Parsons on Contracts, 11. The objects the parties have in view *inducing the contract* are to be considered in its construction. *Strong* v. *Gregory*, 10 Ala., 146.

Contemporaneous facts and circumstances relating to the subject-matter of the contract must be considered in its construction. *Phelps* v. *Bostwick*, 22 Barb., 317.

2. RULES AND DOCTRINES OF THE AUTHORITIES, AND CASES IN POINT.—An obligation to be performed, or to pay money after the death of the obligor, is a valid contract and not a testamentary writing. *Shields and wife* v. *Irwin and Reed, Ex'rs*, 3 Yeates, 389; *Bristol* v. *Warner*, 19 Conn., 18; *Alexander* v. *Brame*, 35 English Law and Eq., 336.

An instrument conveying personal property absolutely, but retaining possession and control thereof during the life of the grantor, is valid. *Robey* v. *Hannon*, 6 Gill., 464; *Jackson* v. *Culpepper*, 3 Kelly, 573; *Robinson* v. *Schly*, 6 Geo., 526; *Jaggers* v. *Estes*, 2 Strobhart's Eq.,

378; *McGlawn* v. *McGlawn*, 17 Geo., 234; *Williams* v. *Sullivan*, 10 Richardson, 223.

An agreement to devise lands in consideration of the payment of an annual sum vests an equitable title in the obligee. *Johnson et al.* v. *McCul*, 34 Penn. St., 181.

A deed, referring to and incorporating a will, is good, and taking the two papers together shall be considered a deed, even if the disposition of the property is to take effect *in future*. *Dawson* v. *Dawson*, Rice's Eq., 260.

Where a deed conveys lands for such uses as are set out in a will already made, neither deed nor will is revocable if no power of revocation is reserved in the deed. *Mayor and City Council of Baltimore* v. *Williams*, 6 Md., 262.

A test for determining whether the instrument is a deed or will, is, if the instrument was effective and operative at its execution it is a deed, if it was only to be effective and operate *in future*, it is a will. *Cumming* v. *Cumming*, 3 Kelly, 479.

An instrument may be partly testamentary and partly a deed. *Robinson* v. *Schly & Cooper*, 6 Geo., 526.

The validity of the instrument must be determined as of the time of its execution. *Alexander* v. *Brame*, 35 Eng. L. and Eq., 336.

III. The obligation, which is the foundation of the suit, is based upon a sufficient consideration.

Where several subscribe an undertaking or a subscription paper for a common object, the promise of the subscribers is a sufficient consideration for the promise of each individual subscriber. *Watkins* v. *Evans*, 9 Cushing, 539; *Troy Academy* v. *Nelson*, 24 Vt., 193; Chancellor WALWORTH, in *Trustees of Hamilton College* v. *Stewart*, 2 Denio, 417; *George* v. *Harris*, 4 N. H. 533; *Congregational Society of Troy* v. *Perry*, 6 Id., 164; *Congre-*

*gational Society of Troy* v. *Goddard*, 7 N. H., 434; *Fisher* v. *Elles*, 3 Pick., 323.

The obligation, which is the foundation of the suit at bar, is not a subscription, nor is it signed by any other party than Dr. Barrett.

The evidence shows (and the same fact appears from the instrument itself) that it was executed with a view to, and in contemplation of, other parties obligating themselves to contribute for the object of endowing the university. Subsequent promises of others, as a consideration, will as well support the obligation as though they had been contemporaneous with it.

The expense, liability and trouble required in the obligation of and incurred and performed by the officers of the institution to secure the endowment, is a sufficient consideration. *Bryant* v. *Goodnow*, 5 Pick., 229; *Thompson* v. *Page*, 1 Metc., 570; *State Treasurer* v. *Cross et al.*, 9 Vt., 292; *Commissioners* v. *Perry*, 5 Ham., 61; *Macon & Burly* v. *Sheppard*, 3 Hump., 337; *Homes* v. *Dana*, 12 Mass., 190; *Barnes* v. *Perine*, 9 Barb., 202; *Robertson* v. *March et al.*, 3 Scam., 200; *Underhill* v. *Gibson*, 2 N. H., 352; *Amherst Academy* v. *Cowles*, 6 Pick., 433; *University of Vermont* v. *Buel*, 2 Vt., 48; *Trustees of Williams College* v. *Danforth*, 12 Pick., 541; *Trustees of Farmington Academy* v. *Allen*, 14 Mass., 172; *Trane* v. *Gould*, 5 Pick., 384.

The execution of the obligation operated as a *request* to plaintiff to incur the expense and trouble in raising the endowment, and such expenses and trouble then is a sufficient consideration for the obligation. *Barnes* v. *Perine*, 9 Barb., 206.

The obligation imposed on and accepted by the plaintiff to take charge of the endowment fund is a sufficient consideration. *Troy Academy* v. *Nelson*, 24 Vt., 193.

The undertaking of plaintiff to raise the endowment

fund is a sufficient consideration. *Trustees of Hamilton College* v. *Stewart*, 1 Comstock, 582; *S. C.*, 2 Denio, 408.

The consideration of the obligation is found in the undertaking of the plaintiff to give free tuition to twenty students forever, which it assumed upon accepting the obligation of Dr. Barrett and giving him notice thereof.

1. The obligation may not have been binding either upon Dr. Barrett or plaintiff, until it was accepted; after that it was mutually binding on both. *L'Amereux* v. *Gold*, 3 Selden, 350.

2. It is not necessary that all parties to a contract should consent at the same time. *Abercrombie* v. *Redpath*, 1 Iowa, 111; *Moore* v. *Pierson et, al.*, 6 Id., 293.

3. It will be presumed, unless the contrary be shown, that the will of the first consenting, continued to the consenting of the other party. *Moore* v. *Pierson et al.*, 6 Iowa, 279.

4. The acceptance of a written contract will bind the party accepting it, though he does not sign it. *Patchin* v. *Swift et. al.*, 21 Vt., 292; *Wise* v. *Roy*, 3 Greene (Iowa), 430; *Attix, Noyes & Co.* v. *Pelan & Anderson*, 5. Iowa, 341.

5. It is not necessary that the consideration exists at the time of making the promise; it may afterward come into existence and will then support the promise. *Trane* .v. *Gould*, 5 Peck, 384.

The building of institutions of learning and the endowment thereof, that the light of education and learning may be disseminated throughout our country; the erection of houses in which to worship Almighty God; the endowment of hospitals, asylums and other institutions for the amelioration of the condition of the distressed and poor, are sufficient considerations upon which to base a contract. *Johnson* v. *Wabash College*, 2 Carter, 555; *Col-*

*lier* v. *Baptist Education Society*, 8 B. Monroe, 68; *Ives* v. *Sterling*, 6 Cush., 318; *Fisher* v. *Ellis*, 3 Pick., 324; *Chambers* v. *Calhoun*, 6 Harris (Pa.), 15; *Reformed Church* v. *Brown's Ex'rs*, 29 Barb., 353; *Hopkins* v. *Upher*, 20 Texas, 89; *Trustees Baptist Society, etc.*, v. *Robinson*, 7 Smith, 234; *Trustees of Church in Pembroke* v. *Stetron*, 5 Pick., 506; *Amherst Academy* v. *Cowles*, 6 Peck, 431; *Underwood* v. *Waldron*, 12 Mich.; 3 Am. Law Reg., new series, 183; *McDonald* v. *Gray*, 11 Iowa, 510; *Caul* v. *Gibson*, 3 Pa. St. Rep. (Barr), 417.

"It is plain that a man may make an immediate gift of money for a charity; and, for such charities for which he can make a gift, he can (acting *bona fide*) make himself a debtor by specialty without valuable consideration," and such a debt will be enforced. *Alexander* v. *Brame*, 35 Eng. Law and Eq., 342.

1. If he can thus make himself a debtor by specialty, why not by an unsealed writing?

2. But the *technical reason* why he could do so by specialty and not by simple contract, does not exist in Iowa since §§ 1823–24 of Revision, which abolish private seals and provide that all contracts in writing shall impart a consideration in the same manner as sealed instruments.

COLE, J.— The plaintiff is an incorporation under and by virtue of the laws of this State. It has had an existance since 1852. At its organization, Dr. Richard F. Barrett (now deceased) gave to the Burlington University about five hundred dollars, and he became a member of its board of trustees, and so continued up to the time of his decease. He resided at the time in St. Louis county, Missouri, where he owned a large amount of property. During that time, he also owned considerable real estate in and about Burlington, Iowa. He was in

the habit of visiting Burlington, in the summer of each year, and perhaps at other times, and frequently attended the proceedings of the board of trustees of the Burlington University, and was regarded as its patron and friend. In September, 1856, he lost a little son, by whose death he was much affected, and expressed his intention of giving that child's share of his estate to some charitable institution. In October of the same year, he signed and delivered to the secretary of the plaintiff, a written declaration, in which he expressed his intention to give such child's part of his estate to the Burlington University.

After this time and prior to March 8, 1858, he had two or three attacks of paralysis. At the date last named, Richard F. Barrett, with his own hand, wrote and signed a paper which he styled his " last will and testament." Item third thereof was as follows: " Ten years after my death I desire that twenty thousand dollars ($20,000) be given to the Baptist College or University at Burlington, Iowa, in money, in debts or notes, in town lots, lands, or in any thing that my estate can best spare; and my executors are to be the judges of its value, etc.; and, as agriculture is the great interest of Iowa, I desire the institution to keep it as a fund, the interest of which is forever to be devoted to the support of a professorship, to be called the Barrett Professorship, to be devoted to agriculture, or to learning pertaining to agricultural affairs. It is to be given to said college, provided it shall have, before that time, a permanent endowment of at least eighty thousand dollars ($80,000), exclusive of the college buildings and grounds around them. I desire this sum to be given to said institution after it shall have insured to it the means of living, and not before. Institutions of the kind cannot live and prosper without an adequate endowment, and my bequest, without more, would be but a drop in the bucket. I therefore make it conditional,

dependent on a previous endowment of eighty thousand dollars ($80,000). With that sum and my bequest the institution should be able to live and prosper, conferring blessings, in the way of education, upon the youth of the town and county in which it is situated."

Afterward, and on the 26th day of July, 1858, the secretary and agent of the plaintiff, visited Dr. Barrett at his residence in St. Louis county, Missouri, and spent much of the day with him. While there, the secretary wrote, and Dr. Barrett signed the following paper, which is the basis of this action :

"WHEREAS, I have in my last will and testament bequeathed unto Burlington University, Burlington, Iowa, twenty thousand dollars ($20,000), to be paid in ten (10) years after my death, on condition that an endowment fund of one hundred thousand dollars ($100,000) shall be secured by that time to this institution, inclusive of my bequest of twenty thousand dollars ($20,000) ; I do now voluntarily agree and bind myself to pay, or to have this sum of $20,000 paid on or before the said time, and on the condition that the institution shall have raised fifty thousand dollars ($50,000), one-half the sum aforementioned, and, further to aid said institution, I also agree and bind myself to pay to the same, two hundred dollars ($200) per annum, for ten years, commencing January 1st, 1861, or until I shall have paid to the institution the aforesaid bequest of $20,000. All of which I do, trusting to the board of trustees and the agent of said institution, that they will, in good faith, execute the pledge voluntarily made to me, in gratitude for my bequest ; that free tuition shall be given to twenty (20) such students, at a time forever, as I shall nominate for the enjoyment of this benefit ; or, in case of my failure to nominate, shall be nominated by the board of trustees, in view of their indigent circumstances, or good moral character and promise of

eminence and usefulness, and also trusting that said board, or agent, will in good faith, persevere in efforts to advance the interests of the institution, until the same shall be fully and amply endowed by at least one hundred thousand dollars ($100,000)—the sum indicated in my bequest. In testimony of all which I do hereto set my hand," etc. At a meeting of the executive committee of the board of trustees, held August 2, 1858, the above agreement was read, accepted, and they pledged themselves to comply with its conditions, and notice thereof was mailed to Dr. Barrett, properly directed.

On the 4th day of July, 1859, Dr. Barrett revoked the paper or will of March 8, 1858, by tearing the same, with intent to revoke and destroy it; and also by writing and signing, entirely with his own hand, another paper or will, expressly revoking therein " all other wills and codicils before made." The eighth item of this last will was as follows : " In March, 1858, I made a will in which I gave the Baptist College in Burlington, Iowa, twenty thousand dollars, conditionally. This bequest I have mentioned to several persons ; lest they think I am fickle, the following statement is due : In March, 1858, I had some fifty or sixty thousand dollars due me, bearing ten per cent; rents in Burlington, Iowa, of hotel, stores, offices, etc., amounting to ten or eleven thousand dollars, thus making my income fifteen or sixteen thousand dollars. The said fifteen or sixteen thousand dollars, have not been, nor can they be collected, interest therefore stops. Rents, then, of hotel, etc., amounting to ten or eleven thousand, are now less than three, not enough to pay taxes, insurance, and interest on the money I borrowed to build addition to hotel, so the twenty thousand I am not able to give to the college, and every prudent man says so. I therefore make a new will, and revoke the bequest, trusting that what I have already given to said college may enable it

to succeed. This will is composed by myself and written and signed with my own paralytic hand, this 4th day of July, 1859."

There is no definite or satisfactory proof as to the amount of the estate of Dr. Barrett. The defendant, who is the son and administrator, testifies that the " estate will not pay the incumbrances on the estate and this sum too." The agent of the plaintiff, who drew the agreement, testifies that the property belonging to that part of his estate, situated in Burlington, Iowa, is, over and above all incumbrances upon it, more than sufficient to pay plaintiff's claim.

Dr. Barrett died in Burlington, Iowa, while on a visit there to spend the summer; his death occurring some time in May, 1860. It is also proved in the case, that the Burlington University, in October, 1865, was out of debt and had property, including college grounds, buildings, library, etc., to the value of about thirty thousand dollars, besides an endowment fund raised since the above agreement was signed by Dr. Barrett, of five thousand dollars, and that it had at all times since been amply able to give instruction to any twenty students that might have been nominated; that its school was in operation and paying all expenses.

Dr. Barrett was evidently of the opinion that, where a will was wholly written and signed by the testator himself, it needed no witnesses. But by the statutes of Missouri, in which State Dr. Barrett resided at the time of making his will and of his death, and by the laws of which, its validity must be determined, it was enacted that "Every will shall be in writing, signed by the testator or by some person by his direction, in his presence; and shall be attested by two or more competent witnesses, subscribing their names to the will in the presence of the testator." Statute of Mo. vol. 2, page 1567, § 4. The

two wills were presented to the probate court of St. Louis county, Mo., and, upon proper proceedings had thereon, they were rejected, and letters of administration were granted upon the estate to the defendant, Richard F. Barrett, who has also qualified in this State. The foregoing are, in substance, all the facts in the case, and in the light of which the agreement in controversy is to be interpreted. The sole question presented for our determination is, what is the true construction and legal effect of the agreement of the 26th day of July, 1858?

The respective counsel in this case have most ably and elaborately argued the several questions involved in it. Very much attention was given, in argument, to the discussion of the question whether the paper writing, of date 26th of July, 1858, and upon which the action is based, is a contract, or a testamentary instrument. The counsel do not, perhaps, materially differ as to the rule by which this question is to be solved. It is substantially this: If the instrument passes a *present interest*, although the right to its possession and enjoyment may not accrue till some future time, it is a *deed* or contract; but if the instrument does not *pass an interest* or right till the *death of the maker*, it is a *will*, or testamentary paper.

The counsel for the plaintiff cites the following authorities in support of his construction of the instrument in controversy as a contract, in each of which the instrument construed was held to be a contract or deed, viz.: *Alexander* v. *Brame*, 35 Eng. Law and Eq., 336; *Robey* v. *Hannon et al.*, 6 Gill (Md.), 463; *Jackson* v. *Culpepper*, 3 Kelly, 569, *i. e.* 573; *Cumming* v. *Cumming*, 3 Id., 460, *i. e.* 479; *Jaggers* v. *Estes*, 2 Strobhart's Eq., 343; *McGlawn* v. *McGlawn*, 17 Geo., 234; *Williams* v. *Sullivan*, 10 Richardson, 219, *i. e.* 223; *Johnson et al.* v. *McCue et al.*, 34 Penn. 180; *Dawson* v.

*[margin note: 1. WILL: contract: construction.]*

*Dawson*, Rice's Eq., 260; *Mayor, etc., of Baltimore* v. *Williams*, 6 Md., 235, *i. e.* 362; *Bristol* v. *Warner*, 19 Conn., 7, *i. e.* 18; *Shields et ux.*, v. *Irwin & Read, Ex'rs*, 3 Yeates (Pa.), 389. While the counsel for defendant cite the following authorities in support of their construction of the instrument in controversy as a testamentary paper, in each of which the instrument construed was held to be a will, viz.: *Hester* v. *Young*, 2 Kelly, 31; *Kinard* v. *Kinard*, 1 Speer's Eq., 256; *Habergham* v. *Vincent*, 2 Vesey, Jr., 224, *i. e.* 230 *x*, 235; *Hunt* v. *Hunt*, 4 N. H., 434; *Crawford* v. *McClay*, 2 Speer's Eq., 230; *Greene* v. *Proud*, 1 Modern, 177, and authorities cited; *Metham* v. *Duke of Devon*, 1 Peere Williams, 529, note *y*, and authorities cited; Williams on Ex'rs, 54 to 59, and authorities cited.

These authorities are pertinently cited, and have a legitimate bearing upon the case under consideration. They severally illustrate and verify the rule, in substance as above stated, and abundantly prove that each case depends upon its own peculiar facts and circumstances. They further show, what is the experience of every court, that there is less difficulty in ascertaining the rule of law applicable to a class of cases, than in the application of the rule to a particular case.

There is another rule or principle of construction applicable to such instruments, as to which the counsel in this case are perfectly agreed. It is, that an instrument may be partly a deed and partly testamentary. *Robinson* v. *Schley & Cooper*, 6 Geo., 526.

2. —— compound instrument.

An examination of the cases will show that, in determining the character of the instrument, as to whether it is testamentary or contract, the courts do not allow the use of language peculiar to either class of instruments, nor even the belief of the maker as to its character, to control inflexibly their construction of

3. —— construction.

it. But, giving due weight to these circumstances, courts look further, and, weighing all the language as well as the facts and circumstances surrounding the parties and attending the execution of the instrument, give to it such construction as will effectuate the manifest intention of the maker and parties to it.

Without giving at any length the reasons or argument in support of our construction of the instrument in controversy, we are entirely agreed in holding that the instrument sued upon does not, of itself, confer any right upon the plaintiff to demand, or any obligation upon the defendant to pay, the twenty thousand dollars; but that the promise to pay two hundred dollars per annum for ten years, commencing January 1, 1861, is a binding contract and promise, and the plaintiff is entitled to recover thereon.

In our view, the language of the instrument, so far as it relates to the twenty thousand dollars, is recitative of a bequest the maker had incorporated in his previous will, and a promise to modify the condition precedent upon which it was made to depend, so far as the time and amount previously to be raised were concerned. In support of this view we stop only to mention one very controlling fact, and that is, that the twenty thousand dollars is three times spoken of in the latter part of the instrument as a *bequest*—not as a promise, agreement or contract, but as a *bequest*. The *promise* refers to the modification of the time and conditions of the payment of the *bequest*.

As to the consideration to support the promise to pay the two hundred dollars per annum, we hold, upon the authorities cited by plaintiff's counsel, that it was sufficient. *McDonald* v. *Gray*, 11 Iowa, 508.

Under the construction of the instrument as given herein it becomes wholly unnecessary to determine

whether the plaintiff, by the terms of the instrument, was to raise or receive fifty thousand dollars, or only thirty, before it would be entitled to the twenty sued for. So also with the other questions discussed by counsel.

