IN RE ESTATE OF JAMES J. DAVIS.

MINNIE H. DAVIS et al., Appellants, v. MINNIE H. DAVIS et al., Appellants; FORDYCE C. PATTON, Appellee.

WILLS: Construction—Survivorship—Lapse of Devise to Spouse. A devise by a husband to his wife is deemed to lapse upon his survival of her when the devise is identical in quality and quantity with what the wife would have taken under the statute, had there been no will; but not so of a devise which gives the wife one third of his entire estate (1) *after* converting all real estate, including the homestead, into personalty, and (2) *after* paying all debts.

DE GRAFF, J., dissents, on instant record.

Headnote 1: 18 C. J. p. 838 (Anno.); 40 Cyc. p. 1925.

Headnote 1: 28 R. C. L. 337.

*Appeal from Plymouth District Court.*—C. C. BRADLEY, Judge.

APRIL 7, 1927.

REHEARING DENIED DECEMBER 17, 1927.

Action to construe the will of James J. Davis, and more particularly the fifth item thereof. The question presented is whether the devise therein to the testator's wife, Sarah, lapsed by reason of his survival of her. The plaintiffs are the surviving children and heirs of the testator by a former marriage. The principal defendant, Fordyce C. Patton, is the only child and sole heir of the wife, Sarah, by a former marriage. The district court held that the devise did not lapse, and that it inured to the benefit of defendant Patton, as sole heir of Sarah. The plaintiffs have appealed.—*Affirmed.*

*Burgess & Gill* and *R. E. Hess,* for appellants.

*Henry W. Wormley,* for appellee.

EVANS, C. J.—The will in question was executed in 1916. Its first five paragraphs are as follows:

"First. I direct that my executors hereinafter named shall sell and convert all my property, both real and personal, that I may die seized of into money, for the purpose of settling my estate and paying the legacies as hereinafter mentioned.

"Second. Out of the money received by my executors I will and direct that they first pay all my just debts, including the expenses of my last sickness and burial.

"Third. That my executors shall set aside the sum of $500.00 and use the same to buy a suitable monument to mark my grave. Said executors to consult with my children and wife in selecting said monument. I will and direct that on one corner of the stone purchased there shall be an Odd Fellows' emblem and on the opposite corner there shall be a Masonic emblem.

"Fourth. I also will and direct that my executors pay to the Kingsley Cemetery Association the sum of $50.00 as an en-

dowment fund for the perpetual care of my burial lot in the Kingsley Cemetery.

"Fifth. I will and direct that after the above sums of money have been paid out or set aside for purpose mentioned above, that my executors pay my beloved wife, Sarah J. Davis, one third of all the money remaining in their hands. It is my wish that my wife, Sarah J. Davis, shall have all household goods as a part of her one third if she so desires. In the event that she wishes to keep the household goods they shall be appraised and sold to her at their appraised value. Said sum to be deducted from the one third of the money to be paid to my wife."

The remaining two thirds of his property was distributed equally among his nine children, including the representatives of one deceased.

At the time of the execution of the will, the property of the testator consisted mainly of a half-section farm and of a residence property in town, covering an area of five acres. In 1920, the half-section farm was sold and conveyed by the voluntary act of husband and wife, and the proceeds thereof came under the operation of the will. In March, 1923, the wife, Sarah, died. Four months later, the testator died, without making any change in his will. The devise to the wife was not conditioned in terms on her survival.

The contention for the plaintiffs is that the will by its terms indicates an intention on the part of the testator to devise to his wife, Sarah, only that part of his estate to which she would be entitled under the law, as her distributive share. It is contended that the case comes within the rule recognized by us in *Tennant v. Smith*, 173 Iowa 264, and in *Herring v. Herring*, 187 Iowa 593. In the *Herring* case we said:

"It is well settled that, where a devise in a will gives the same estate to the devisee that he would take under the statute of descent, if there were no will, the beneficiary in such case still takes the 'worthier title' by descent, and not under the will. *Rice v. Burkhardt*, 130 Iowa 520; *Tennant v. Smith*, 173 Iowa 264; *Gilpin v. Hollingsworth*, 3 Md. 190 (56 Am. Dec. 737, 738); *Post v. Jackson*, 70 Conn. 283 (39 Atl. 151); *Davidson v. Koehler*, 76 Ind. 398."

In the *Tennant* case we first applied the foregoing rule to a

devise by one spouse to another. Such application of the rule was followed in the *Herring* case. In so applying the rule, we followed authorities from other jurisdictions, which are cited in the above quotation from the *Herring* opinion. In order to bring the case within this rule, it is essential that the provision for the surviving spouse under the will should be identical in quantity and quality with the statutory provision to the same end. If such respective provisions be identical in the given case, then the beneficiary would be deemed to take under the statute, as conferring the "worthier title," and the provision of the will would be deemed nugatory or canceled thereby. Such identity of provision is deemed sufficient evidence of an intent on the part of a testator that the devise should lapse if the spouse should predecease him. The question presented was last before us in *In re Will of Watenpaugh*, 192 Iowa 1178. The devise under consideration in the *Tennant* case was as follows:

"I give and bequeath to my husband, Jonathan Duncan, such share of my estate as he is entitled to have and receive under the laws of the state of Iowa."

In the *Herring* case the devise was as follows:

"I give, and bequeath to my husband, Peter Rohret, all that share or part of my estate, real, personal and mixed, which would go to him under the statute of distribution of this state, if I should die intestate, neither desiring to increase nor curtail his said distributive share or interest in my estate, but intending to leave him to take just so much as the law gives to a surviving husband in cases of intestacy."

We construed each of the foregoing provisions as being identical with the statutory provisions, and that it awarded to the devisee neither more nor less than he was entitled to under the statute, and that the devise lapsed upon the death of the devisee before that of the testator. In the *Watenpaugh* case the testator devised to his wife property greater in quantity and substantially different in quality than she would have taken under the statute. We held the rule contended for as not applicable, and that the devise did not lapse.

In the case before us there is no provision in the will which indicates any intent that the devise should lapse in the event of the death of the devisee before that of the testator; unless it can be said that the testamentary provision in her behalf and the

statutory provisions are identical. The district court held that they were not identical, and awarded the devise to the heir of Sarah.

We need consider but one feature of this devise, though there are others that would bear interesting discussion. It will be noted that the devise awards to the wife one third of the net estate, subject to the payment of the obligations of the estate. If the estate consisted wholly of personalty, this would be in accord with the statutory provision. In so far as real estate was involved, it was not in accord with the statutory provision. When the will was made, the property of the testator consisted in the main of his half-section farm and the residence property comprising five acres in town. The wife's right of distributive share in such real estate would not be subject to the payment of debts. It appears, however, that the farm was converted into personalty by the voluntary conveyance of husband and wife in 1920. If the same thing had occurred as to the residence property, it could be said that from that time forth, and at the time of the death of the testator, the will should be deemed to dispose of an estate consisting wholly of personalty. But the residence remained as real estate, and the wife's right of distributive share would have applied to one third in value thereof, to say nothing of homestead rights. Appellant's response to this situation is that the residence property was likewise converted into personalty by the terms of the will, and that, therefore, the will should be deemed to dispose of personal property only. It is doubtless true that the provisions of the will worked an equitable conversion of the real estate owned by the testator at the time of his death, in so far as it was within his power to work such conversion. But he had no power to work such equitable conversion as against his surviving wife. The very provision of the will which purported to work such equitable conversion was an invasion of the right of distributive share in kind, rather than a recognition of it. This of itself destroyed the identity claimed as between testamentary and statutory provision. We have no need to pursue the discussion further. We think the district court properly ruled the case.

We are not unmindful of the possibilities pressed upon us that, the testator may have misconceived the legal effect of the terms of his will. That is always possible in every testamentary

disposition. He was survived by eight children and by ten children of a deceased daughter, and he might easily be deemed to have preferred his own kin to a stranger in blood. But speculations of that kind are not permissible to the courts. The language of the will must be their sole guide. The rule of construction here applied is not technical or burdensome in its requirement. It were simple to have made the devise to the wife conditional upon her survival, if such were the intent. It were likewise simple to have added a brief codicil to the will after her death, if such were necessary to express the final intention of the testator. Sufficient to say that the decree of the district court was obedient to the terms of the will.

It is accordingly affirmed.—*Affirmed.*

Faville, Albert, and Morling, JJ., concur.

De Graff, J. (dissenting).—Were it not for Section 11861, Code of 1924, the daughter of the deceased wife by a prior husband would take nothing under the instant will. This is agreed. The rule of statute, therefore, is in derogation of the common-law rule which recognized that a devise or legacy lapsed if the beneficiary under the will predeceased the testator.

The statutory rule creates substituted beneficiaries,—to wit, the heirs of the deceased devisee or legatee. This substitution, however, is not absolute, but conditional. If the devisee or legatee dies before the testator, then his or her heirs shall inherit the property so devised or bequeathed, but upon the *condition,* to wit, when and only in the event that the terms of the will do not manifest a contrary intent. The quest, therefore, is the usual one,—to find the intent of the testator. This intent is discoverable from the language of the will, when read, interpreted, and understood in the light of the situation surrounding the testator at the time of making his will.

Let us visualize the factual environment at the time in question. The testator was the father of nine children, of whom eight were then living. To them and the children of the deceased child he gave all he could legally give. He had a wife. To her he gave the legal minimum. The major part of his property when he made the will was in real estate. He did not wish to devise the land in specie, so he *mentally* converted it, which, in legal phraseology, constituted an equitable conversion. He said

to himself : "I will give, and do give, the spouse one third of my property, now viewed as personalty." Of course, he knew, or was bound to know, that the wife, if she survived him, might elect to take under the law, and not under the will; but this fact, in my judgment, has no bearing on the declaration of his intent then and there made. *Her* subsequent desire or intent, which never found expression, is not a consideration in the discovery of *his* intent. He did expressly and explicitly give to his spouse one third of all he had in personalty.

A widow's interest in her husband's estate is determined by the law in force at the death of the husband. The testator's wife never became his widow. The right to take property by devise or descent is a statutory privilege. The statutes cover the entire field of succession, either by descent or by will.

The statute of descent is an incident of the right of private property. It recognizes that blood is thicker than water; that kin is to be preferred to a stranger in the descent of property. *Carpenter v. Severin*, 201 Iowa 969, 977 (43 A. L. R. 1340).

These concepts should be recognized, and the so-called "worthier title" doctrine is not applicable in the instant case. The question in the last analysis is : Can it be said, under the terms of the will and the facts surrounding its making, that the testator did not intend that strangers to him should take under his will? If any inference is to be drawn, it should be indulged in his favor, and in favor of his own kin.

I would reverse.