OPAL L. BENZ, as surviving spouse of GEORGE H. BENZ, and as administratrix of the estate, appellant, v. LOUISE PAULSON et al., appellees (NELLIE BENZ et al., substituted appellees).

No. 48666.

(Reported in 70 N.W.2d 570)

1006

June 7, 1955.

Don H. Jackson and Proctor R. Perkins, both of Council Bluffs, for appellant.

H. C. Churchman and John P. Churchman, both of Council Bluffs, for appellees.

THOMPSON, J.—On May 31, 1921, George H. Benz, then unmarried, executed a purported last will and testament, the material part of which is this:

"In the Name of God, Amen! I, (s) George H. Benz, being of sound mind and memory, but knowing the uncertainty of human life, do now make and publish this my last will and testament, that is to say:

"That all my real and personal property be conveyed to my Mother, Matilda Benz, Council Bluffs, Iowa.

"(s) George H. Benz."

Then followed the usual form certificate of two attesting witnesses. All of the will except for the name "George H. Benz" in the first sentence and the words "That all my real and personal property be conveyed to my Mother, Matilda Benz, Council Bluffs, Iowa" and the signature "George H. Benz" immediately following was a printed form. The excepted words were in the handwriting of George H. Benz. The record shows that the will was executed as a requirement of the Scottish Rite Temple of the Masonic Order at Des Moines, into which George H. Benz was about to be initiated. Although the matter is not entirely clear,

it was apparently left with the registrar of the Temple, at least for some time after its execution. Proper execution, for the purposes of this case, is conceded.

By stipulation of fact these matters appear: George H. Benz married the appellant herein, Opal L. Benz, on July 16, 1921. They resided during their married life in Council Bluffs, Iowa, and no children were born to them. George H. Benz, hereinafter referred to as the decedent, died a resident of said city on May 4, 1953, and on June 3, 1953, the appellant Opal L. Benz filed a petition for a grant of letters of administration upon his estate; said petition reciting that decedent died intestate. Letters of administration were duly issued to the appellant on June 5, 1953. About August 4, 1953, there was filed with the clerk of the district court of Pottawattamie County the instrument above set forth. On December 7, 1953, a petition for probate of the purported will was filed, notice prescribed and the date for hearing fixed for December 14, 1953. The notice was duly given as ordered. On December 10, 1953, the court stayed all proceedings relative to the probate of the will until the action for declaratory judgment was determined.

The action for declaratory judgment was commenced by appellant-widow on October 23, 1953. It alleged that the writing claimed to be the will of George H. Benz is not a testamentary bequest or devise, because it is an attempt to direct that property be "conveyed", is an attempt to direct a person or persons unknown to convey decedent's property to his mother, and was intended to be effective as a gift to her only if she was living at the time of the death of decedent, and there was no intent to bequeath after-acquired property. The same points are elaborated throughout the petition by allegations that Matilda Benz must have survived her son in order to take under the will; that she having died before him, the attempted gift never became effective, but lapsed; and that the provisions of section 633.16, Code of Iowa, 1950, the "antilapse" statute, therefore never became effective. The prayer of the declaratory-judgment petition was that the court decree the claimed will is not effective to create a gift or devise to Matilda Benz, that her heirs, the defendants, take nothing under it, and that plaintiff, as the surviv-

ing spouse of a decedent dying without issue, be adjudged to be entitled to the first $15,000 of the estate and one half of the remainder.

The defendants, two sisters and a brother of George H. Benz (and so two daughters and a son of Matilda Benz), answered, alleging the validity of the will, that it created a bequest to Matilda Benz of all the property of the estate of George H. Benz, and that Matilda Benz having died intestate prior to the death of George H. Benz, the answering defendants were entitled to the benefits provided by section 633.16, supra, and to take the share bequeathed to Matilda Benz. Before the case was reached for trial the defendant Fred Benz died, leaving a surviving widow and five minor children, who were substituted as defendants.

It appears without dispute that the father of George H. Benz died intestate on December 4, 1941, and Matilda Benz, his mother, died intestate on June 30, 1943. It also appears that all real estate in which George H. Benz had any interest at the time of his death was held in joint tenancy with Opal L. Benz, the appellant; and that the personal property, which is all of his estate that could be affected by the will, was about $15,000 in value. No question is made but that the appellant, as the surviving widow, has the right, if the bequest to Matilda Benz is upheld and the defendants are entitled to take under the antilapse statute, to reject the will and take her distributive share of one third. The defendants in their answer prayed that appellant be named as administratrix with the will annexed. The court decided all issues in favor of the defendants.

I. The appellant's contentions revolve chiefly around the use of the words "be conveyed" as set out in the purported will. It is said, first, that the instrument is not a will, because the words quoted are foreign to wills, that the instrument reveals no testamentary intent and fails to make any testamentary disposition of the property. The word "convey", it is urged, has no meaning in relation to personal property, but relates only to realty; and its use here is such that if the word has any significance it appears someone unnamed was to make over the property, at the death of the decedent, to his mother, Matilda Benz.

We are of course concerned in the first instance with the intent of the maker of the will. That it was intended to be a will is too clear to require extended discussion. It is described as "this my last will and testament"; and it is signed and witnessed with the formalities requisite to testamentary instruments. The appellant's case at this point must depend entirely upon the contention that the writing in question is meaningless because of the use of the words "be conveyed", in that they have no relation to personalty, and if they do they effectuate nothing because they do not directly bequeath anything to Matilda Benz, but merely direct someone unspecified to "convey" to her after the death of the maker.

"Convey" is a word used in the law, in its technical application, to refer to deeds or other instruments passing title to real estate. But we are concerned here, not with the niceties of technical legal terms, but with the intent of the maker of the instrument. In re Estate of Longer, 108 Iowa 34, 78 N.W. 834, 75 Am. St. Rep. 206, has many aspects of similarity to the case at bar on this point. There the language of the paper before the court was " 'I agree to will.' " The trial court held there was no bequest or devise to any of the persons named, and the instrument was not sufficient to constitute a will. But we said (pages 36 and 37 of 108 Iowa, page 834 of 78 N.W.):

"We cannot agree with the conclusion of law announced by the trial court. No particular form is required for a will. Much latitude is allowed in the construction of such instruments. * * * The main object of the courts is to learn the intention of the maker. *The intention being known, all inartificiality of language or looseness of expression must yield to and be governed by it."* (Italics supplied.) The words " 'I agree to will' " were held to mean nothing more than " 'I do will.' "

Following the sound reasoning of the Longer case, supra, we hold that the words "be conveyed" mean no more than "devise and bequeath." The language is not that of a skilled legalist, and the record makes it evident that the will was drawn hurriedly and with little time for thought or preparation. At this point we find appropriate language used by Justice Weaver, in Flynn v.

Holman, 119 Iowa 731, 738, 94 N.W. 447, 449: "An inspection of the instrument indicates at once that the scrivener was an unlearned person. * * * It is the business of the courts, however, to deal, with such instruments, and, if it be found possible within the bounds of reasonable interpretation, declare and give effect to the intention embodied therein."

The intent of the testator to leave all his property to his mother is evident.

The distinction between deeds or contracts on the one hand, and testamentary papers on the other, is discussed at length in Shaull v. Shaull, 182 Iowa 770, 166 N.W. 301, 11 A. L. R. 15. Numerous authorities are there cited and analyzed. It would serve no good purpose to study them further here. It will be sufficient to quote the general rule laid down in Burlington University v. Barrett, 22 Iowa 60, 72, 92 Am. Dec. 376, and approved in the Shaull case, at page 774 of 182 Iowa, page 302 of 166 N.W.:

" 'If the instrument passes a present interest, although the right to its possession and enjoyment may not accrue till some future time, it is a deed or contract; but if the instrument does not pass an interest or right till the death of the maker, it is a will, or testamentary paper.' "

II. The major contention of the appellant is thus stated: "We reach here the appellant's contention which concedes its (the will's) testamentary nature but asserts that in any event the gift to Matilda Benz lapsed upon her death. * * * While we have chosen to discuss other propositions ahead of this one in our brief, we have done so only because they may throw some additional light on what we believe to be the soundest and most logical contention of appellant's position."

Briefly, the appellant's theory is that the antilapse statute does not apply because the will shows an opposite intention. We set out here section 633.16, supra, the statute in question: "If a devisee die before the testator, his heirs shall inherit the property devised to him, unless from the terms of the will a contrary intent is manifest."

It is settled that the intention of the testator must be determined as of the time of the execution of the instrument. In re Estate of Davis, 204 Iowa 1231, 213 N.W. 395. Likewise all

words used in a will are to be given effect if possible and are to be considered in their ordinary and usual meaning. Henkel v. Auchstetter, 240 Iowa 1367, 39 N.W.2d 650; Geisinger v. Geisinger, 241 Iowa 283, 41 N.W.2d 86; 57 Am. Jur., Wills, section 1147. These are general rules, but they throw little illumination upon the problem before us. Appellant's argument again revolves around the words "be conveyed." Her counsel, referring to this language, says:

"Conveyed by whom? If anyone, he must have meant by the personal representative of his estate. * * * To make this effective, the person receiving the gift must be living and in existence at the time the conveyance takes place. * * * This is no more than the ordinary and reasonable meaning of the words as used by George Benz."

The argument is ingenious, but not sound. Much of our discussion in Division I is in point here. The burden was upon the appellant to show from the terms of the will a "contrary intent"; that is, that the antilapse statute did not apply. We held in Division I that the words "be conveyed" are no more than the equivalent of "devise and bequeath." In re Estate of Longer, supra, is again pertinent. The intent of George H. Benz to leave all his property to his mother abundantly appears, and an inept choice of words does not obscure his real purpose. In a sense, any bequest of personal property is a direction to the personal representative to make it over to the beneficiary named in the will to receive it. It goes first to the executor or administrator, who after administering the estate pays over what remains—"conveys" in the language of the instrument before us—to the named residuary legatee. That such beneficiary may predecease the testator has never before been thought to show an intent on the part of the latter that section 633.16, supra, should not take effect. The layman is not apt to draw fine distinctions in the use of the word "convey" as between realty and personalty; and this is a will, the troublesome part of which is in a layman's handwriting and in his language.

It is not always easy to say whether a "contrary intent" is shown by a will. But here we know the testator was unmarried when he executed the instrument. His mother was perhaps his

likeliest beneficiary. There is nothing to show whether he expected her to survive him. If he desired to show a "contrary intent" under the antilapse statute, he could easily have added the words "if she survives me." We cannot add them for him. We may doubt that the decedent knew of the antilapse statute, or for that matter of the common-law rule of lapse. But on these things we cannot speculate. All men are presumed to know the law, and, perhaps for lack of a better guide, to avoid uncertainty and confusion, courts are forced to follow this presumption. We find nothing in the will which manifests the contrary intent required to prevent the operation of the antilapse statute.

III. Appellant further urges that there is no sufficient showing that decedent intended to pass after-acquired property by the will. The record fails to show whether the personal property owned by George H. Benz at the time of his death had been acquired by him before or after the making of the will. But, if we assume it is after-acquired property, we are still unable to say the will indicates an intent it should not pass; or, as appellant puts it, we cannot say the intention of the testator is not clear and explicit that it should pass, and so that it becomes intestate property. Section 633.4, Code of Iowa, 1950, says: "Property to be subsequently acquired may be devised, when the intention is clear and explicit."

We have pointed out that the intention of the testator must be determined as of the time of the execution of the will. In re Estate of Davis, supra. But it is also true that a testamentary disposition of property speaks as of the date of the testator's death. In re Will of Miller, 128 Iowa 612, 616, 617, 105 N.W. 105, 106; Luers v. Luers, 145 Iowa 600, 602, 124 N.W. 603, 604, 139 Am. St. Rep. 453.

"While, as a general rule, a will is said to speak as of, or from, the death of the testator, yet this relates to the effect and operation of the instrument; but the will should be construed as of the date of its execution." In re Estate of Warren, 211 Iowa 940, 948, 949, 234 N.W. 835, 839.

This statement was cited with approval in Beem v. Beem, 241 Iowa 247, 254, 41 N.W.2d 107, 111.

■ At common law, in the absence of a showing of contrary intent, after-acquired personal property passed under a will, but realty did not. Our section 633.4, supra, has the effect of placing both after-acquired personalty and real estate in the same category. Since we are dealing here only with personal property, this section is actually not important. If it be conceded that the personalty involved in the estate of George H. Benz was after-acquired, it would pass by his will even in the absence of section 633.4. If it be thought the phrase "when the intention is clear and explicit" adds something to the common-law rule, making it necessary that such intention be made to appear, the answer is found in several Iowa cases which have dealt with the question now before us. This section has appeared in the Iowa law, without substantial change, since the Code of 1851.

In Briggs v. Briggs, 69 Iowa 617, 619, 29 N.W. 632, 633, we said: "The meaning of the section is, we think, that subsequently-acquired property shall be held to pass by the bequest, whenever the intent of the testator to have it so pass is fairly to be inferred from the provision of the will, when construed according to the established rules for the construction of such instruments; and it is not necessary that the intention be expressed in direct language."

In Luers v. Luers, supra, 145 Iowa 600, 601, 124 N.W. 603, 604, 139 Am. St. Rep. 453, there was a devise of " 'all my real estate which is' " followed by a description of specific lands; followed by " 'all other real estate now owned by me.' " This was held to devise after-acquired realty.

In Whitney v. Whitney, 178 Iowa 117, 118, 159 N.W. 657, the devise was of " 'All the rest, residue and remainder of my property * * *, of whatsoever kind or nature, and wheresoever situated, I give, devise and bequeath * * *.' " This was construed as making the intent to devise after-acquired property "clear and explicit." It was said, at page 120 of 178 Iowa, page 658 of 159 N.W.: "A general devise of all real estate is held to evidence an intent to pass after-acquired realty included in the generic description, and nothing in the case at bar exacts an exceptional ruling."

In the Whitney case, supra, this court also quoted with approval this reasoning from Briggs v. Briggs, supra, page 619 of 69 Iowa, page 633 of 29 N.W.:

"Bequests in this form, of the residue of the estate, have always been held to carry the residuum of all the personal property owned by the testator at the time of his death. As to that class of property the rule is that the will speaks from the time of the death, and not from the date of its execution. * * *

*"The reason of this rule is found in the very nature of the testamentary act. By that act the testator makes a disposition of his property which is to take effect at his death. His language necessarily relates to that time, and he speaks in anticipation of that event."* (Italics supplied.)

We find these authorities directly in point here. While the decedent did not in terms refer to the "residue" of his estate, he did in fact bequeath it all to his mother. There was no residue; or, perhaps it is in fact more nearly exact to say he did in fact bequeath the residue. The entire estate necessarily includes the residue.

IV. The appellant's final contention is that the trial court erred in admitting the will to probate, without requiring proof from the witnesses, and perhaps other formalities. The point has little value for the appellant in any event. The validity of the will was one of the issues in the declaratory-judgment action now before us on appeal. The genuineness of the signatures of the testator and of the witnesses and the formalities of signing and execution were conceded, at least for the purposes of the present action. Under familiar rules pertaining to splitting of causes of action, appellant could not be later permitted to challenge the will upon different grounds from those asserted. If there are other persons concerned who were not parties to this case, and so are not bound by its result, we may assume they will appear and assert such rights as they may have if they are so advised. We find the judgment of the trial court to be in all respects correct.—Affirmed.

All JUSTICES concur.